**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Paul JONES, Defendant-Appellant.**

No. 85–2605.

United States Court of Appeals,
Tenth Circuit.

April 29, 1987.

J. Steven Schweiker, Overland Park, Kan., for defendant-appellant.

Robert S. Streepy, Asst. U.S. Atty. (Benjamin L. Burgess, Jr., U.S. Atty., with him on the brief), Kansas City, Kan., for plaintiff-appellee.

Before BARRETT and SEYMOUR, Circuit Judges, and CHILSON,* District Judge.

SEYMOUR, Circuit Judge.

John Paul Jones was convicted in a jury trial of one count of conspiracy to distribute Schedule III and Schedule IV controlled substances in violation of 21 U.S.C. § 846 (1982), seven counts of distributing Schedule III and Schedule IV controlled substances in violation of 21 U.S.C. § 841(a)(1) (1982), and two counts of attempting to evade income taxes in violation of 26 U.S.C. § 7201 (1982). Jones contends on appeal that (1) his convictions under section 841(a)(1) cannot be sustained because, while working as a physician's assistant, he prescribed the controlled substances to his patients for valid medical reasons under the authorization of a supervising physician; (2) his conviction for the conspiracy count placed him in double jeopardy; (3) the conspiracy charge is barred by the statute of limitations; and (4) the evidence is insufficient to sustain his conviction for attempting to evade income taxes. We disagree and therefore affirm.

## I.

John Paul Jones and eight others were originally indicted on May 23, 1985 and charged with conspiring to distribute controlled substances. The indictment also charged Jones with being engaged in a continuing criminal enterprise (CCE), and with two counts of attempting to evade income taxes. The grand jury returned a superseding indictment on August 13, 1985, which again charged Jones with conspiring to distribute controlled substances. Named as co-defendants in the conspiracy count were Vernon Webb, Carol Hansell, Ethel Clagett, Curtis Minton, and Francis J. Jones, Jr., a cousin of John Paul Jones. The superseding indictment dropped the CCE charge against John Paul, but added eight counts of distributing controlled substances and two counts of attempting to evade income taxes. One of the eight distribution counts was dismissed by the Government at trial.

The conspiracy charges against Webb, Hansell, and Minton were dismissed after all three pleaded guilty to other offenses. The Government prosecuted John Paul Jones, Francis J. Jones, and Ethel Clagett

---

* The Honorable Hatfield Chilson, United States District Judge, District of Colorado, sitting by designation.

in a joint trial. The jury acquitted Clagett, but convicted John Paul Jones of conspiracy, seven distribution counts, and the two tax evasion counts. The jury also convicted Francis Jones of conspiracy, a conviction that we reversed in a separate opinion for insufficiency of evidence. *United States v. Jones*, 808 F.2d 754 (10th Cir.1987).

Viewed in the light most favorable to the Government, *see United States v. Hooks*, 780 F.2d 1526, 1529 (10th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986), the facts are as follows. From August 1979 until March 1981, defendant worked as a physician's assistant at the Central Clinic in Kansas City, Kansas. The clinic was owned by Francis Jones, a doctor of osteopathy, who had leased the clinic to Vernon Webb, another doctor of osteopathy. While working at the clinic, defendant illegally distributed prescription drugs in two ways. First, defendant masqueraded as a physician at the clinic and prescribed drugs to his patients using Dr. Webb's Drug Enforcement Administration (DEA) controlled-substance registration number. Second, defendant called in false prescriptions to local pharmacies (again using Dr. Webb's registration number), sent runners to pick up the drugs, and then used those drugs for illegal street sales. According to the Government's theory at trial, the false-prescription diversion scheme was implemented through a large, multi-part conspiracy between defendant and each of his drug runners and sellers.

The Government produced evidence at trial that defendant earned approximately $21,000 in 1979 and $23,000 in 1980 from his illegal drug activities. Defendant failed to report these amounts as income on his federal tax returns filed for those years.

## II.

Defendant first contends that, as a physician's assistant, he was entitled to prescribe controlled substances as long as the prescriptions were for valid medical reasons and were authorized by his supervising physician, Dr. Webb. The evidence demonstrates, however, that he was not authorized by Dr. Webb to issue prescriptions.

Defendant alternatively argues that, even if the prescriptions were not authorized by Dr. Webb, his conviction cannot be sustained if he prescribed controlled substances for valid medical reasons. In support of this argument, defendant cites *United States v. Goldstein*, 695 F.2d 1228 (10th Cir.1981), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983). In *Goldstein*, this court held that the dispensing of controlled substances for valid medical reasons by *a physician who is registered with the DEA* does not constitute a violation of 21 U.S.C. § 841(a)(1), even though the controlled substances were dispensed from an unregistered location. *Id.* at 1231–33. Defendant's contention that *Goldstein* applies to the facts of his case is totally without merit. Although some of his prescriptions may have been for valid medical reasons, defendant is not a physician, nor is he registered with the DEA.

## III.

Defendant was convicted in 1983 of conspiracy to manufacture and distribute phencyclidine (PCP). The conviction arose from defendant's activities between November 1979 and April 1980, when he planned and set up a PCP lab with Gary Stroble and Michael Hultgren, and sold PCP manufactured at the lab. Defendant's 1983 conviction was affirmed by this court in *United States v. Jones*, 730 F.2d 593 (10th Cir.1984).

Defendant contends, on double jeopardy grounds, that the 1983 conviction should bar his present conviction for conspiracy to distribute Schedule III and Schedule IV controlled substances. He argues that the two conspiracies are really parts of a larger, unified conspiracy, and that convicting him once in 1983 and again in 1985 violated his right not to be placed twice in jeopardy for the same offense.

The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from being tried twice for one offense. *United States v. Genser*, 710 F.2d 1426,

1428 (10th Cir.1983). This circuit applies the "same evidence" test to determine the validity of a double jeopardy claim. *See id.* at 1429 n. 3. That test provides that the "offenses charged are identical in law and fact only if the facts alleged in one would sustain a conviction if offered in support of the other." *United States v. Puckett,* 692 F.2d 663, 667 (10th Cir.), *cert. denied,* 459 U.S. 1091, 103 S.Ct. 579, 74 L.Ed.2d 939 (1982). If "each count requires proof of a fact or element not required by the other," the offenses are not identical, *Nolan v. United States,* 423 F.2d 1031, 1048 (10th Cir.1969), *cert. denied,* 400 U.S. 848, 91 S.Ct. 47, 27 L.Ed.2d 85 (1970), and thus do not raise double jeopardy concerns.

■ The burden of establishing a double jeopardy claim is on defendant. *United States v. Thompson,* 814 F.2d 1472, 1476 (10th Cir.1987); *Puckett,* 692 F.2d at 668; *United States v. Eggert,* 624 F.2d 973, 975 (10th Cir.1980) (per curiam). Jones must therefore demonstrate that the two conspiracies are the same for purposes of double jeopardy. *See Thompson,* 814 F.2d at 1476. Both the indictment and transcript of the previous trial are relevant in evaluating whether a second indictment and trial violate the Double Jeopardy Clause. *Puckett,* 692 F.2d at 667. Although we have the transcript of the first trial, defendant has failed to provide us with either the indictment or the jury charge. We know from the opinion affirming defendant's conviction, however, that he was charged and convicted of conspiring with Michael Hultgren and Gary Stroble to manufacture and distribute PCP in violation of 21 U.S.C. §§ 841, 846. In this case, the indictment and the evidence show that he was convicted of conspiring with Michael Hultgren, Curtis Minton, Jesse Jones, Donna O'Brien, and several others to distribute different controlled substances in violation of 21 U.S.C. § 846.

The trial court, in response to defendant's double jeopardy argument, specifically found that the offenses charged in 1983 and 1985 involved "separate and distinct conspiracies." Rec., supp. vol. II, at 5-A. This conclusion is essentially a finding of fact, and we therefore review it under the clearly erroneous standard. *See United States v. Broce,* 781 F.2d 792, 797-98 (10th Cir.1986) (en banc); *United States v. Beachner Constr. Co.,* 729 F.2d 1278, 1281 (10th Cir.1984).

■ Several facts support our conclusion that the trial court's finding of separate and distinct conspiracies is not clearly erroneous. First, the goals of the two conspiracies were completely different—the 1983 conviction involved a conspiracy to set up a PCP lab; defendant's 1985 conviction was for conspiring to distribute prescription drugs from the Central Clinic. Second, the participants in the two conspiracies were, for the most part, different. The only link between the two offenses is Michael Hultgren, who participated in both illegal activities, and who testified that the Central Clinic drug diversion scheme was being used to finance the PCP lab. This link does not establish that there was only a single conspiracy. The evidence indicates that defendant was involved in separate agreements to achieve separate objectives, although the two activities shared some common elements. On this record, we cannot say that the trial judge was wrong in concluding that each conspiracy count required proof of facts that the other count did not, *see Nolan,* 423 F.2d at 1048, and that the facts alleged at either trial would be insufficient to sustain a conviction in the other trial, *see Puckett,* 692 F.2d at 667. We therefore conclude that defendant has failed to sustain his burden of establishing a double jeopardy violation.[1]

---

1. Defendant also raises a procedural argument concerning the trial court's treatment of his double jeopardy claim. He argues that once he made a prima facie showing that the present indictment and trial placed him in double jeopardy, he was entitled to an evidentiary hearing on his claim, with the burden falling on the Government to establish the existence of separate and distinct conspiracies. *See United States v. Garcia,* 721 F.2d 721, 723 (11th Cir.1983). After reviewing the records we have been provided from both trials, we conclude that defendant failed to establish a prima facie case. We therefore need not reach the balance of his procedural argument.

## IV.

Defendant also argues that the 1985 conspiracy count is barred by the applicable statute of limitations, 18 U.S.C. § 3282 (1982), which provides that a defendant must be indicted within five years after an offense is committed. In order to fall within the statute of limitations, at least one overt act in furtherance of the conspiracy must have been committed within five years of the date of the indictment. *See Fiswick v. United States*, 329 U.S. 211, 216, 67 S.Ct. 224, 227, 91 L.Ed. 196 (1946).

█ In support of his statute of limitations claim, defendant asserts that the controlling date should be the date of the superseding indictment, August 13, 1985. He argues that if a superseding indictment broadens the charges against a defendant, the filing date of the superseding indictment rather than the original indictment should control. Without addressing the merits of this argument as a general proposition, we note that the superseding indictment did *not* broaden the charges against defendant *with regard to the conspiracy count*. The conspiracy counts in both indictments are substantially the same. In fact, the superseding indictment *narrows* the conspiracy charge against defendant by describing a shorter period of illegal activity and by alleging fewer co-conspirators. Thus, we follow the general rule that the date of the original indictment, May 23, 1985, controls for purposes of the statute of limitations. *See United States v. Garcia*, 412 F.2d 999, 1000–01 (10th Cir.1969).

The Government presented substantial evidence at trial that defendant used his position at the Central Clinic to call in false prescriptions to pharmacies, send runners to pick up the prescriptions, and use the drugs for illegal street sales. The evidence demonstrates that defendant's runners knew the drugs they delivered to defendant were being acquired and distributed illegally. At least one of the runners, Donna O'Brien, testified that she knew the identities of the other runners working for defendant. Even if all of the runners were not aware of each other's existence, this evidence tends to show that there was a single conspiracy, involving defendant and all of his runners. *See United States v. Worley*, 751 F.2d 348, 351 (10th Cir.1984).

The record indicates that at least one overt act in furtherance of the conspiracy was committed within five years of May 23, 1985. Defendant himself testified about a July 1980 transaction involving diverted drugs. According to defendant's testimony, in July 1980 he gave Curtis Minton some Didrex that defendant had obtained through his false prescription scheme. The Didrex was used as payment for some Quaaludes that Minton had previously given to defendant to sell. Michael Hultgren, a witness for the Government, testified that on July 22, 1980, he picked up the false Didrex prescription, delivered it to defendant, and then witnessed defendant giving the drugs to Curtis Minton. Minton testified that he kept some of the Didrex and sold the rest.

Defendant attempts to discount the significance of this transaction by a two-part argument. First, Michael Hultgren at the time was a government agent; both parties agree that he could not, therefore, be considered a member of defendant's conspiracy. Thus, defendant argues, obtaining the Didrex while using Hultgren as a runner cannot count as an overt act in furtherance of the conspiracy. Second, defendant argues that the Didrex payment to Minton was not an act in furtherance of the conspiracy, but was merely a single buyer-seller transaction that happened to involve diverted drugs.

█ On this record, we reject both of these arguments. Although the existence of a buyer-seller relationship, without more, does not constitute a conspiracy, *United States v. Watson*, 594 F.2d 1330, 1337 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979), the Didrex payment was not merely a single buyer-seller transaction. Rather, the record demonstrates that Minton knew the Didrex had been illegally diverted and that he used the Didrex for a subsequent illegal sale. The transaction was thus not simply an isolated event, but was part of the conspiracy as a whole. *See id.* Furthermore, even if Min-

ton were not part of the conspiracy, the act of giving the illegally obtained drugs to Minton furthered the conspiracy with defendant's runners. In order for the drug diversion scheme to succeed, defendant needed a means of disposing of the diverted drugs. Whether defendant sold these drugs for money or traded them for other drugs, each illegal distribution furthered the goal of the conspiracy. Finally, although the Didrex was picked up by Hultgren, who is not considered a co-conspirator, obtaining the drug was an overt act committed by defendant in furtherance of his conspiracy with the other runners. For these reasons, we conclude that the July 1980 transaction constituted an overt act in furtherance of the conspiracy. Defendant's conspiracy conviction is therefore not barred by the statute of limitations.[2]

### V.

■ Finally, defendant contends that the evidence is insufficient to sustain his conviction for attempting to evade income taxes. In his brief he argues that "[w]illful failure to file a return, together with willful failure to pay the tax, does not, without more, constitute an attempt to evade income tax." Brief of Appellant at 31 (citing *Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943)). We agree with defendant that, under *Spies,* the Government must also prove that he committed some affirmative act constituting an attempt to evade taxes. *Spies,* 317 U.S. at 499, 63 S.Ct. at 368; *see also, United States v. Samara,* 643 F.2d 701, 703 (10th Cir.), *cert. denied,* 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981). The evidence demonstrates, however, that defendant did commit such acts. He did not merely fail to file his tax returns or fail to pay his taxes; rather, he did file his tax returns, but misstated his incomes for 1979 and

1980 by failing to report his earnings from illegal drug activities. Defendant's filing of his tax returns with the knowledge that he should have reported more income is sufficient to sustain the jury's conclusion that defendant willfully attempted to evade taxes. *See Sansone v. United States,* 380 U.S. 343, 351–52, 85 S.Ct. 1004, 1010–11, 13 L.Ed.2d 882 (1965); *United States v. Fahey,* 510 F.2d 302, 306 (2d Cir.1974) (citing *Sansone* ).

AFFIRMED.

---

**2.** Defendant argues alternatively that the Government's delay in bringing an indictment violated his right to due process. This circuit has devised a two-part test to determine whether a preindictment delay violates due process: the defendant must show that he suffered "actual prejudice" resulting from the delay, and that the delay "was purposefully designed to gain tactical advantage or to harass" the defendant. *Unit-* ed States v. Jenkins, 701 F.2d 850, 854 (10th Cir.1983) (quoting *United States v. Beitscher,* 467 F.2d 269, 272 (10th Cir.1972)). Although Jones claims that he was prejudiced by the delay, he does not contend, nor does the evidence suggest, that the delay was designed to gain a tactical advantage or to harass him. We therefore reject his due process argument.