**Wilton HOWELL, Petitioner–Appellee,**

v.

**W.R. BARKER; Attorney General of the State of North Carolina, Respondents–Appellants.**

No. 88–7106.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1988.

Decided May 24, 1990.

Barry Steven McNeill, Asst. Atty. Gen. (argued) and Lacy H. Thornburg, Atty. Gen. (on brief), North Carolina Dept. of Justice, Raleigh, N.C., for appellants.

Geoffrey Carlyle Mangum, Winston–Salem, N.C., for appellee.

Before ERVIN, Chief Judge, and RUSSELL, Circuit Judge, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.

KISER, District Judge:

The appellee, Wilton Howell, filed this petition for writ of habeas corpus in the United States District Court for the Eastern District of North Carolina on October 14, 1986. As a ground for relief, he asserts a due process violation arising out of a delay by the Bladen County Sheriff's Department in the service of his arrest warrant and the return of an indictment for robbery with a dangerous weapon, as a result of which he was unable to locate an alibi witness for use at his trial.[1] The petition for writ of habeas corpus was first heard by Magistrate Alexander Denson, who recommended that the petition for habeas relief be granted and the indictment against Howell be dismissed. The district court, on objections to the magistrate's recommendations, affirmed the magistrate's finding of a due process violation, but rejected the magistrate's remedy. The district court held that the writ should issue and ordered a retrial. *Howell v. Barker*, 684 F.Supp. 132 (E.D.N.C.1988). The State of North Carolina appealed. We affirm.

*Facts and Procedural History*

On the afternoon of September 19, 1979, Ms. Ruby Carlyle, a 66–year–old woman confined to a wheelchair, was robbed of approximately $1000 at gunpoint and knifepoint by two young black males at her rural gas and grocery store in Bladen County, North Carolina. The Bladen County Sheriff's Department investigated the robbery. Ms. Carlyle told the investigating officers that the robbers were driving a black Chevrolet and that, earlier in the day, the robbers had been at the store in the car. Harold Hayes was at Ms. Carlyle's store at the time of the robbers' first visit. He saw a black male in the store and another at the pump by a black Chevrolet with mag wheels, one of which had a missing lug on the back wheel.

The black car driven by the robbers became a significant clue. Patrolman Covington of the North Carolina highway patrol was familiar with a black Chevrolet, usually driven by appellee, Wilton Howell, which had mag wheels. Covington undertook a surveillance of Howell's house and discovered a black Chevrolet parked at the back of the house. Covington conducted a consent search of the car in which he found cash register keys, some small change, a divider from a cash drawer, a gas cap, and a knife.[2] A consent search of Howell's home was also conducted, and a .38 caliber revolver was discovered.[3]

On October 31, 1979, Detective Phillip Little of the Bladen County Sheriff's Department interrogated Howell with respect to the Carlyle robbery at the Robeson County jail where Howell was being held on unrelated charges. Later that day, Howell appeared before Ms. Carlyle in a line-up.[4] Ms. Carlyle identified Howell as a man who looked like one of the robbers.

1. There was no contention of any unnecessary delay after the arrest and indictment of appellee. Such delay as there was after indictment resulted from the motions of the appellee and need for evidentiary hearings on such motions. Except for the delay caused by the appellee himself, there was no unnecessary delay in processing the appellee's prosecution after his indictment. The appellee raised claims of other alleged errors in his trial, but he has limited his appeal to the alleged error in prosecutorial delay.

2. Ms. Carlyle testified that the knife looked like the knife the robber used to threaten Ms. Wilkins.

3. At trial, Ms. Carlyle identified both the gun and the knife as the weapons used during the robbery. At trial, Harold Hayes was shown photographs of the car found at Howell's residence by Patrolman Covington. Hayes identified the black Chevrolet as the car with the missing lug that he had seen on the morning of September 19 at Ms. Carlyle's store.

4. Howell was represented by retained counsel at the line-up. The fairness of the line-up has never been questioned.

On November 1, 1979, Detective Little obtained a warrant for the arrest of Howell on a charge of robbery with a dangerous weapon. Bladen County and Robeson County are adjacent to each other, and the county seats of the two counties are less than thirty miles apart. However, Detective Little did not serve the arrest warrant on Howell because he was aware that it' was the practice of Robeson County officials to hold arrest warrants from other counties until all Robeson County proceedings were completed. This practice was followed in order to avoid the inconvenience and expense of transporting the wanted person back and forth between the two counties for hearings and trials.

Howell remained in the Robeson County jail until March 1980, when he was delivered to and placed in the custody of the North Carolina Department of Corrections. He remained in the prison system until he was paroled in April 1981. At no time during these periods of incarceration did the Bladen County authorities serve or attempt to serve the arrest warrant for the Carlyle robbery on Howell. No one in the Bladen County Sheriff's Department knew of Howell's whereabouts until February 2, 1982, when Howell appeared at the department to request the return of the gun that had been seized in the 1979 search. Howell was served with the November 1, 1979, arrest warrant on February 4, 1982, some 27 months after the warrant had been issued.

On March 22, 1982, a Bladen County grand jury returned a true bill against Howell on a charge of robbery with a dangerous weapon in violation of N.C.Gen. Stat. § 14–87 (Cum.Supp.1979). Howell filed a motion to dismiss the indictment in the Superior Court of Bladen County on the grounds that he had been denied due process because of the delay in serving the arrest warrant which resulted in the unavailability of his alibi witness, Ray Hunt. Judge Edwin Preston granted an evidentiary hearing, which was held on May 10, 1982. On May 12, 1982, Judge Preston

entered an order denying the motion to dismiss. Judge Preston made the following findings of fact:

12. That on or about September 19, 1979, the defendant was employed by the City of Lumberton and Hunt's Body Shop in Lumberton, North Carolina;

13. That the defendant contends that he was working with Roy [sic] Hunt at the time of said robbery alleged to have occurred on September 19, 1979; and defendant contends that Roy [sic] Hunt is unavailable to testify for the defendant; that defendant has offered no evidence of any efforts which he has made to locate Roy [sic] Hunt.

Upon the basis of these findings of fact, Judge Preston concluded as a matter of law:

[T]he delay between the issuance of the arrest warrant on November 1, 1979 and the service of the warrant on the defendant on February 4, 1982 was not prejudicial to the defendant in the conduct of his defense; nor was said delay unreasonable, unjustified, and engaged in by the prosecution deliberately and unnecessarily in order to gain tactical advantage over the defendant such as to violate due process.

The case proceeded to trial and Howell was convicted of armed robbery on October 12, 1982. Howell appealed the conviction, claiming that the preindictment delay of approximately two years and four months was unreasonable and denied him due process of law and the right to a speedy trial. The North Carolina Court of Appeals rejected both of Howell's arguments and affirmed the judgment of conviction.[5] *State v. Howell*, 67 N.C.App. 763, 314 S.E.2d 147 (1984). In connection with Howell's claim that the preindictment delay constituted actual and substantial prejudice because of the resultant unavailability of Howell's alibi witness, the court stated:

Defendant has failed to show any tactical disadvantage because he could not locate

---

**5.** The Court of Appeals found that the sixth amendment right to a speedy trial had no application to the defendant because the right was

not triggered until the defendant was formally accused by indictment, information, or arrest.

Roy [sic] Hunt, an alibi witness; what he did to locate him, or that he is [sic] lost due to the preindictment delay; or that the witness would have significantly aided his defense. Defendant at most has demonstrated only potential prejudice, not actual prejudice.

On October 11, 1984, Howell filed a motion for appropriate relief in which he again alleged that the 27–month delay in serving his arrest warrant prejudiced him in that his alibi witness, Ray Hunt, who was unavailable in November 1979, could not be located at the time of trial in October 1982. A plenary hearing on Howell's motion for relief was held before Judge Craig Ellis on February 18, 1985. Judge Ellis dismissed the motion based on these express findings:

(3) That at the plenary hearing on February 18, 1985, the petitioner, Wilton Howell, testified that he asked in 1982 after the warrant was served on him in February, of 1982, to have Mr. Hunt located; and that his brother looked for Mr. Hunt, but could not find Mr. Hunt; that Mr. Hunt had moved to Florida.

(4) That Stacy Howell, brother of petitioner, testified that he and Mr. Jack E. Carter tried to locate Ray Hunt after his brother was arrested in 1982; and that Stacy Howell talked with Charlie Matamoros, a relative of Mr. Hunt; that Mr. Hunt was supposed to have moved to Florida and he did not know where.

(5) That George Ray Hunt testified that in September, of 1979, he was operating Ray's Body Shop on West Fifth Street in Lumberton, North Carolina; that he knew the petitioner; that the petitioner was working with him at that time; that on September 19, 1979, the petitioner was working for him and came to work early that day from his job with the City of Lumberton; that George Ray Hunt paid Wilton Howell for his work that week in an amount larger than he usually paid him; that the petitioner was at work that day until 5:00– or 6:00 o'clock p.m.; and that Mr. Howell did not leave the body shop that day.

(6) That Mr. Hunt testified that he has six sisters; that none of them live in Lumberton, but one did live in Lumber-

ton in 1982; and that the sister should have known what his address was in Florida.

(7) That Mr. Hunt is now residing in Robeson County. That there is no evidence that Mr. Howell or anyone acting in his behalf attempted to locate Mr. Hunt's sisters or mother to determine the location of Mr. Hunt in the State of Florida.

(8) That the name of Mr. Hunt was given to Mr. Phillip Little of the Bladen County Sheriff's Department; and that Mr. Little asked the Robeson County Sheriff's Department to try to locate him, but received no answer back.

(10) That the testimony of Mr. Hunt would tend to corroborate the testimony of Wilton Howell as to his employment on the date of the alleged robbery, but that it does not amount to new evidence or additional evidence.

(11) That Mr. Howell has not established that with due diligence he attempted to locate Mr. Hunt, and the Court finds that with due diligence Mr. Hunt could probably have been located in the State of Florida.

Howell petitioned for certiorari review of Judge Ellis' decision, but the Supreme Court of North Carolina denied the writ.

After exhausting his state remedies, Howell filed this petition for writ of habeas corpus on October 14, 1986. Howell alleges that his constitutional rights have been violated because (1) he was denied a speedy trial, (2) he was not served with the arrest warrant until 27 months after the warrant's issuance, (3) his due process rights were violated by the mishandling of the testimony of a state witness, and (4) his motion to suppress the prosecuting witness' identification of him was denied. The case was referred to United States Magistrate Alexander Denson who disposed of the matter on the record of the evidentiary proceedings in the state court.

In his report and recommendation, the magistrate recognized that a party seeking due process relief under the fifth amend-

ment because of the unavailability of a material witness at trial has the burden of establishing that he was prejudiced. In order to make a showing of prejudice, Howell was required to (1) identify "the lost witness," (2) "demonstrate the content of the witness' testimony," and (3) "show that efforts were made to locate" the witness. The magistrate found that Howell had satisfied requirements (1) and (2). In connection with requirement (3), the magistrate reviewed the evidentiary hearings in the state court proceedings and found "that petitioner [Howell] did make a reasonable and diligent effort to locate Hunt prior to his trial."

The magistrate based this finding on the testimony of Wilton Howell's brother, Stacy Howell, who testified that Wilton's lawyer had asked him to find George Ray Hunt. Stacy testified that he asked Hunt's brother-in-law, Charlie Matamoros, for Hunt's address. Matamoros told Stacy that Hunt lived in Florida but he did not have his address. The State of North Carolina contended that Howell failed to demonstrate that he made an effort to locate Hunt because he did not ask Hunt's mother or sister for Hunt's address. The magistrate rejected the state's position because it failed to establish that Howell or his brother knew Hunt's mother or sister.

After finding that Howell had established prejudice, the magistrate balanced the prejudice to Howell with the State of North Carolina's reasons for the delay. The magistrate concluded that:

> [The] delay both in serving the arrest warrant and in indicting Petitioner [Howell] was the result of a *conscious decision* by Bladen County authorities. The only reason for the delay in serving the arrest warrant (an act which certainly would have started Petitioner's speedy trial clock), was an interest in conveniencing the Robeson County authorities. Convenience to prison and law enforcement officials cannot override a defendant's constitutional right to due process and a fair trial regardless of the fact that

such a defendant is imprisoned on another matter.

. . . . .

> The record ... establishes that by November 1, 1979, the prosecuting authorities had completed their investigation into the Carlyle robbery. By the first of November, all physical evidence had been obtained, and witnesses to the robbery had been interviewed, the prosecuting witness had identified Petitioner from a lineup, and Petitioner's location had been determined.... There is no satisfactory excuse offered for the lack of diligence in serving Petitioner with the arrest warrant.

Thus, the magistrate recommended that Howell's petition for habeas relief be granted and the indictment be dismissed.

On March 29, 1988, the United States District Court for the Eastern District of North Carolina adopted the magistrate's report, but determined that the remedy was "inappropriate." The district court granted the writ for habeas corpus conditionally and ordered that Howell be released if the State of North Carolina had not commenced a retrial prior to May 28, 1988.

On April 20, 1988, the State of North Carolina filed its notice of appeal. On April 29, 1988, North Carolina filed a motion for stay of execution of the writ issued by the district court which this Court granted. North Carolina argues on appeal that the district court erred in failing "to require Howell to show that the state intentionally delayed serving the warrant to gain some tactical advantage, or that the state displayed even a reckless disregard of circumstances suggesting an appreciable risk that delay would impair the defense."

### Discussion

■ We first note that, in its brief on appeal, North Carolina failed to address the issue of actual prejudice. Instead, North Carolina chose to devote its entire discussion to the alleged requirement that a defendant, in order to establish a due process violation for preindictment delay, must prove improper prosecutorial motive

in addition to actual prejudice.[6] We further note that in reviewing the tape of oral argument before this Court, all colloquies between the Court and counsel for the State of North Carolina *assumed* that the 27–month preindictment delay actually prejudiced the defendant, and focused instead on the alleged requirement of improper prosecutorial motive. Therefore, given this Court's assumption, and counsel for the State of North Carolina's both affirmative and tacit concession that the 27–month preindictment delay actually prejudiced the defendant, the issue of actual prejudice need not be addressed.[7] Thus, the remaining issue, after proving actual prejudice, is whether a defendant seeking due process relief from preindictment delay must further prove improper prosecutorial motive as the cause for the delay.

The State of North Carolina argues that a defendant must show both actual prejudice and improper prosecutorial motive to gain due process relief for preindictment delay. As support, North Carolina cites decisions from a number of circuits, as well as the Supreme Court's decision in *United States v. Gouveia*, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). Though we agree that other circuits have reached conclusions similar to the position advanced by North Carolina, we disagree that *Gouveia* is clear precedent. Granted, in *Gouveia*, the Supreme Court stated that the fifth amendment requires dismissal of an indictment if a defendant proves actual prejudice and intentional delay by the prosecutor to gain an advantage over the defendant. *Gouveia*, 467 U.S. at 192, 104 S.Ct. at 2299.

The Court, however, was merely restating in *dicta* the established outer contour of unconstitutional preindictment delay.[8]

The Supreme Court addressed the due process ramifications of preindictment delay in *United States v. Lovasco*, 431 U.S. 783, 797, 97 S.Ct. 2044, 2052, 52 L.Ed.2d 752 (1977), and *United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971). In both of these cases, the Supreme Court concluded that based on the particular facts of each case, the preindictment delay involved did not violate the defendant's due process rights. In *Marion*, the Court agreed with the government's concession that intentional delay by the government to gain tactical advantage over the defendant, in addition to substantial prejudice to the defendant, would violate due process. *Marion*, 404 U.S. at 324–25, 92 S.Ct. at 465–66. The Court cautioned, however, that:

> [W]e need not, and could not now determine when and in what circumstances actual prejudice resulting from preaccusation delays requires dismissal of the prosecution. Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of a defendant to a fair trial will necessarily involve a delicate judgment *based on the circumstances of each case.*

*Id.* (emphasis added).

In *Lovasco*, the Court held that investigative delay, as opposed to intentional de-

---

**6.** North Carolina stated the issue as follows: Whether the district court erred in granting appellant Wilton Howell a writ of habeas corpus based on his claim that he was denied his rights to due process of law and a fair trial because of a 27–month delay by the state in serving him with the warrant for his arrest, where there is no showing that the delay was for the purpose of causing Howell to lose his alibi witness or to gain other deliberate tactical advantage.

**7.** Judge Russell disagrees with the majority's position on this issue and finds error in the district court's adoption of the magistrate's recommendation because it gave no deference to

the finding of no actual prejudice by the state court. The majority's position is that deference to the state court findings of fact is not necessary because North Carolina conceded the fact of actual prejudice in its brief and at oral argument. *See Fowler v. Rhode Island*, 345 U.S. 67, 69, 73 S.Ct. 526, 527, 97 L.Ed. 828 (1952) (concession made at oral argument by the State of Rhode Island was fatal to the state's case).

**8.** The issue the Court addressed in *Gouveia* was the parameters of the sixth amendment right to an attorney as it applied to inmates being held in administrative detention pending indictment for crimes committed while in prison. *Gouveia*, 467 U.S. at 182, 104 S.Ct. at 2294.

lay undertaken to gain tactical advantage, would not violate due process. *Lovasco,* 431 U.S. at 795–96, 97 S.Ct. at 2051–52.[9] The *Lovasco* Court also noted that there is little guidance to be given lower courts who are left with the task of applying the principles of due process "to the particular circumstances of individual cases" to determine whether a defendant has been prejudiced by preaccusation delay. *Id.* at 796–97, 97 S.Ct. at 2051–52.

Therefore, in both *Lovasco* and *Marion,* the Supreme Court made it clear that the administration of justice, vis-a-vis a defendant's right to a fair trial, necessitated a case-by-case inquiry based on the circumstances of each case. Rather than establishing a black-letter test for determining unconstitutional preindictment delay, the Court examined the facts in conjunction with the basic due process inquiry: "whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' ... and which define 'the community's sense of fair play and decency.'" *Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2048 (citations omitted); *see United States v. Automated Medical Laboratories,* 770 F.2d 399, 404 (4th Cir.1985).

■ Applying these principles of due process to the case at hand, we cannot agree with the position taken by the State of North Carolina and those other circuits which have held that a defendant, in addition to establishing prejudice, must also prove improper prosecutorial motive before securing a due process violation. Taking this position to its logical conclusion would mean that no matter how egregious the prejudice to a defendant, and no matter how long the preindictment delay, if a defendant cannot prove improper prosecutorial motive, then no due process violation has occurred. This conclusion, on its face, would violate fundamental conceptions of justice, as well as the community's sense of fair play. Moreover, this conclusion does not contemplate the difficulty defendants

either have encountered or will encounter in attempting to prove improper prosecutorial motive.

The better position, and the one previously taken by this Circuit in *United States v. Automated Medical Laboratories, supra,* is to put the burden on the defendant to prove actual prejudice. Assuming the defendant can establish actual prejudice, then the court must balance the defendant's prejudice against the government's justification for delay. *Automated Medical Laboratories,* 770 F.2d at 403–04. "The basic inquiry then becomes whether the government's action in prosecuting after substantial delay violates 'fundamental conceptions of justice' or 'the community's sense of fair play and decency.'" *Id.* at 404 (citations omitted).

■ In the case at bar, actual prejudice is assumed and conceded; thus, the defendant's due process claim is ripe for adjudication. *See Lovasco,* 431 U.S. at 789, 97 S.Ct. at 2048 ("proof of actual prejudice makes a due process claim concrete and ripe for adjudication...."). Under *Automated Medical Laboratories,* we next must balance the defendant's prejudice against North Carolina's justification for delay. At oral argument, counsel for the State of North Carolina unequivocally and candidly stated that North Carolina's justification for the preindictment delay was mere convenience, and that North Carolina was "negligent" in not prosecuting the defendant earlier. North Carolina makes no assertion that the defendant's case was particularly complicated, or that the state was engaged in preindictment investigation. On balance, therefore, there is no valid justification in this case for the preindictment delay that prejudiced the defendant.

Accordingly, the district court's decision granting the defendant's petition for a writ of habeas corpus because of the unconstitutional preindictment delay is affirmed. At

---

**9.** The *Lovasco* Court noted, however, that a due process violation could be made out "upon a showing of prosecutorial delay incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense." *Lovasco,* 431 U.S. at 795 n. 17, 97 S.Ct. at 2051 n. 17.

oral argument, counsel for the defendant and counsel for the State of North Carolina expressed their belief that the defendant could get a fair retrial. Thus, the district court's order that the execution of the writ be conditioned upon the failure of North Carolina to retry the defendant by a certain date is also affirmed. This case is hereby remanded to the district court to set a date by which the defendant's retrial must be commenced.

AFFIRMED AND REMANDED.

DONALD RUSSELL, Circuit Judge, dissenting:

I dissent from the majority opinion herein. I, however, accept substantially the statement of facts as stated on pages 1–10 of the majority opinion, except for its second paragraph on page 10 and for certain additions I later indicate.

I shall attempt to state the reasons for my dissent. I begin by noting first the petitioner's claim as stated in his habeas petition filed in the district court. In that habeas petition, the petitioner alleged a due process violation of his right "to a fast and speedy trial in that such denial resulted in the unavailability of witnesses to testify in behalf of petitioner." [1]

The delay was prejudicial to petitioner's trial, "in violation of the Sixth and Fourteenth Constitution [sic]." [2] In this statement the petitioner correctly recognized that delay in prosecution *absent actual prejudice*, does not present a due process

violation. *Stoner v. Graddick*, 751 F.2d 1535, 1544 (11th Cir.1985) ("if no substantial prejudice is proved, then the guidepost for judging impermissible delay is the Alabama statute of limitation, which would, in this case, allow for delay in excess of 19 years"). It is only "proof of actual prejudice [which] makes a due process claim [for delay in prosecution] concrete and ripe for adjudication." *United States v. Lovasco*, 431 U.S. 783, 790–91, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). However while, as stated, actual prejudice is "necessary" in order to render the claim justiciable, it does not make the claim "automatically valid," *United States v. Lovasco, supra,* at 789, 97 S.Ct. at 2048, since, according to the majority view, for instance, there must be in addition to actual prejudice proof that the delay was "a deliberate device to gain an advantage over [the defendant]." *United States v. Gouveia*, 467 U.S. 180, 192, 104 S.Ct. 2292, 2299, 81 L.Ed.2d 146 (1984).

Moreover, the requirement of actual prejudice is a "fairly stringent" standard, *Stoner v. Graddick, supra,* at 1544; *United States v. Castellano*, 610 F.Supp. 1359, 1385 (S.D.N.Y.1985), one under which "a defendant bears a heavy burden" of proof. *United States v. Marler*, 756 F.2d 206, 213 (1st Cir.1985); *see also* 28 U.S.C. § 2254(d). It means specifically "actual," not "speculative or premature" prejudice. *United States v. Marion*, 404 U.S. 307, 326, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971). The Supreme Court has not, though, sought to identify "in the abstract" the circumstanc-

---

1. The petitioner's assertion of a Sixth Amendment violation is extensively discussed in the magistrate's opinion. The magistrate indicated doubt whether delay prior to the issuance of an arrest warrant and prior to an arrest triggered the Speedy Trial Clause of that amendment. He, however, seemed inclined to the view that the Clause covered the period between the issuance of the arrest warrant and the actual arrest. In my opinion, that question was settled in *United States v. McDonald*, 456 U.S. 1, 7–8, 102 S.Ct. 1497, 1501–02, 71 L.Ed.2d 696 (1982). In that case, the Supreme Court said:

   Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, *see United States v. Lovasco*, 431 U.S. 783, 788–89 [97 S.Ct. 2044, 2047–48, 52 L.Ed.2d 752] (1977), or to a claim under any applicable statutes of limitations,

   no Sixth Amendment right to a speedy trial arises until charges are pending.
   456 U.S. at 7, 102 S.Ct. at 1501.
   In any event, the magistrate determined that the petitioner's claim should be resolved as a due process claim and not one under the Speedy Trial Clause of the Sixth Amendment, and the petitioner has not taken exception to this procedure.

2. He submitted with his petition a supporting memorandum of law, which said that a federal court was "bound by [the] presumption of correctness standard enunciated in *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), and under 28 U.S.C. Section 2254(d)(8) to overturn a State Court finding of fact when the finding is not *fairly supported in the record*" (emphasis in original).

es which will constitute in this context "actual prejudice; ... [i]ndeed, in the intervening years [between *Marion* and *Lovasco*] so few defendants have established that they were prejudiced by delay that neither this court nor any lower court has had a sustained opportunity to consider the constitutional significance of various reasons for delay." *United States v. Lovasco, supra,* at 796–97, 97 S.Ct. at 2051–52. The Supreme Court has, therefore, left to the lower courts the development of the circumstances when "actual prejudice" will arise in a case of delay in prosecution.

When the claim of delay relates to the unavailability of a substantial witness at trial, though, the courts have uniformly established the standard to be applied in accessing actual prejudice in such a case. Under this standard, the defendant, in order to establish actual prejudice, is required (1) to identify the lost witness; (2) to demonstrate the content or substance of the witness' testimony; and (3) to show what efforts were made to locate the witness. *United States v. Brown,* 742 F.2d 359, 362 (7th Cir.1984); *United States v. Kidd,* 734 F.2d 409, 413 (9th Cir.1984); *United States v. Mills,* 641 F.2d 785, 788 (9th Cir.), *cert. denied,* 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221 (1981); *United States v. Tousant,* 619 F.2d 810, 814 (9th Cir.1980). Both the state courts and the magistrate (whose decision was adopted by the district court) accepted this standard for determining actual prejudice in this case. I therefore take it to be the controlling standard in assessing actual prejudice here.

There was no dispute that the petitioner had met the first and second requirements of the test for establishing actual prejudice in the case of an unavailable witness in a criminal trial; the controversy in this case focuses on the magistrate's findings relating to the third requirement. The parties agree that under this requirement the petitioner had the burden of establishing "that petitioner [Howell] did make a reasonable and diligent effort to locate Hunt prior to his trial." The magistrate would find that the petitioner had met this standard. He did so on the state record alone; he held no

independent evidentiary hearing. The state courts, on the other hand, found on the same record that the petitioner "ha[d] not established that with due diligence he attempted to locate Mr. Hunt, and the Court finds that with due diligence Mr. Hunt could probably have been located in the State of Florida." Thus we have two conflicting findings on a critical issue, dispositive of petitioner's due process claim, one made *de novo* by the magistrate on the state court record and the other by the state courts on two evidentiary hearings in said state courts.

The magistrate held, as we have indicated, no independent evidentiary hearing, but he accepted the state record as the basis for his findings. This record consists of two proceedings, in connection with which the state courts held separate evidentiary hearings and made like findings. We review briefly these two proceedings. At the first state proceedings held at the time of trial, the petitioner sought dismissal of the proceeding because of "the delay between the issuance of the arrest warrant on November 1, 1979, and the service of the warrant on the defendant [petitioner] on February 4, 1982." The court held an evidentiary hearing in the matter. At that hearing, the petitioner contended that he was working for Roy Hunt at the time he was alleged to have robbed the victim but that Hunt was unavailable to testify. It was said Hunt had moved from Lumberton and was unavailable as an alibi witness for petitioner. However, the state court at that time found from the evidence that "a sister of said Roy Hunt currently lives in Lumberton, N.C." The petitioner offered testimony that Hunt had closed his body shop and had left Lumberton and that he did not know where he was at the time of the trial. The state raised the point that neither the petitioner nor anyone on his behalf attempted to secure Hunt's address from the sister. This was the critical fact in the state court's decision, both in this and in the later proceedings. As we see later, the United States Magistrate dismissed out of hand this contention, stating bluntly that "there was no evidence that

petitioner or his brother knew of Hunt's sister." However, petitioner himself, in his direct testimony in the suppression hearing, testified as follows:

Q. And is Mr. Hunt still in the body shop business over there in Lumberton?

A. No, sir.

Q. Where is Mr. Hunt at this time?

A. I don't know really. All I—I talked to his sister a while back, and she said he was in Florida.

The petitioner, so far as the record shows, made no inquiry of the sister where Hunt was in Florida. Presumably, if the sister knew her brother was in Florida, she knew his whereabouts in Florida. It would certainly have been natural to inquire of the sister Hunt's location in Florida. Petitioner seemed to have assumed that the fact that Hunt was in another state was sufficient for his motion to suppress and made no further inquiry of Hunt's sister. The court denied the motion to dismiss with a written opinion, holding that the petitioner had "offered no evidence of any efforts which he has made to locate Roy Hunt," and thus had not established either actual prejudice or that the government had any connection with Hunt's absence "in order to gain tactical advantage over the defendant such as to violate due process."

The matter thereafter went to trial and the petitioner was convicted. He appealed his conviction to the North Carolina Court of Appeals, claiming error in the denial of his motion to dismiss because of the unavailability of the witness Hunt. The Court of Appeals affirmed the conviction, holding that the "Defendant has failed to show any tactical disadvantage because he could not locate Roy Hunt, an alibi witness, what he did to locate him, or that he is lost due to the pre-indictment delay; or that the defendant would have significantly aided his defense. Defendant at most has demonstrated only potential prejudice, not actual prejudice."

The petitioner later filed for post-conviction relief in the state court. This was a second time to present to the state court the issue that is the heart of this appeal.

The petitioner had in his petition for relief included certain parts of the transcript of the hearing on the pre-trial motion of the petitioner. The petitioner also testified at the evidentiary hearing on this motion for post-conviction relief. He testified to no inquiries made by him of the whereabouts of Hunt in Florida in his talk before trial with Hunt's sister. An affidavit of Charlie Matamoros was introduced at the hearing. Matamoros said that the petitioner's brother Stacy inquired of him where he could reach Hunt, and he told him he knew only "that Roy had moved to Florida." The petitioner offered no other proof of any effort on his part or on his behalf to locate where Hunt lived in Florida. The state court dismissed the petition, making these written findings, among others: that "his brother looked for Hunt, but could not find Mr. Hunt, that Mr. Hunt had moved to Florida," that Hunt had six sisters, one of whom was living in Lumberton in 1982, and that "there is no evidence that Mr. Howell [the petitioner] or anyone acting on his behalf attempted to locate Mr. Hunt's sisters or mother to determine the location of Mr. Hunt in Florida." It concluded with this finding: "That Mr. Howell has not established that with due diligence he attempted to locate Mr. Hunt, and the Court finds that with due diligence Mr. Hunt could probably have been located in the State of Florida." The state court accordingly dismissed the post-conviction petition.

This federal habeas action followed. The proceedings were assigned to the magistrate, who held, as we have said, no evidentiary hearing but rendered his findings of fact on the basis of the state record. He found on the state record that the petitioner had made "a reasonable and diligent effort to locate Hunt prior to his trial." He recognized that this was an essential fact on which the petitioner had the burden of proof. He excused this failure of the petitioner to seek information from Hunt's sister or mother by finding that petitioner did not know the sister. The district court adopted as its opinion the findings and conclusions of the magistrate.

The findings made by the federal magistrate were not based on an evidentiary hearing held by him but solely on the state record of petitioner's petition to suppress and of his post-conviction petition. It was a review without any deference to the prior state findings on the due process claim. The two successive state courts' findings, on the other hand, were made on the basis of a plenary hearing in each case by the judge who filed written findings in support of his decision, and who had the benefit of hearing and seeing in person the witnesses. More importantly, the findings and conclusions of the magistrate do not purport to comply with the Congressional mandate of 28 U.S.C. § 2254(d) or with the decisions prescribing the application of such section as illustrated by the decision in *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), which directs federal courts to accord deference to the findings of the state court in such cases as this and, if he differs, to state his reasons for such difference; in fact, it is completely silent on both the statute and the Supreme Court's decisions on the application of the statute. That was plain error that demands reversal, unless we are to assume that § 2254(d) and *Sumner v. Mata* have no relevancy. I now address this error.

Title 28 U.S.C. §§ 2254(d) and (e) provide that in any federal habeas petition by a person such as Howell, who was incarcerated pursuant to a judgment of a state court, "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish [one of the some eight exceptions that apply]," the last of which is (8):

unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

Subsection (d) continues with the statement that if exception (8) is raised, "the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous."

*Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), sets forth the standards to be followed in applying § 2254(d). As was the situation here, the petitioner in *Sumner* was in state custody under a state judgment of conviction of murder. The state offered three witnesses who identified the defendant as a participant in the murder. The defendant in turn offered three witnesses who said they saw the defendant in bed at the time of the fatal stabbing. He made no objection to this identification testimony at trial but on appeal he did object. He asserted the pretrial photographic identification as conducted by the state police violated due process. In disposing of that claim, the California Court of Appeals said that the case was to be decided on its facts. It then reviewed the facts and concluded that the circumstances of the identification "indicate[d] the inherent fairness of the procedure" and found "no error in the admission of the identification testimony." No attempt was made to secure review of the decision by the state supreme court. The defendant did raise it again in his state post-conviction proceeding but again the claim was dismissed. Federal habeas was then filed in the district court, which denied the petition. On appeal the court of appeals reversed. The appellate court reviewed the case on the same record, which consisted of the state court trial record, just as the magistrate did in this case. Its findings were "considerably at odds with the findings made by the California Court of Appeals," again just as the magistrate did in this case. It accordingly granted the petition. On certiorari the Supreme Court reversed.

The Supreme Court, in its opinion reversing the grant of the writ, began by declar-

ing "[s]ection 2254(d) applies to cases in which a state court of competent jurisdiction has made 'a determination after a hearing on the merits of a factual issue.'" 449 U.S. at 546, 101 S.Ct. at 768. The policy basis for such statute is stated to be "federalism" and

> [t]his interest in federalism recognized by Congress in enacting § 2254(d) requires deference by federal courts to factual determinations of all state courts. This is true particularly in a case such as this where a federal court makes its determination based on the identical record that was considered by the state appellate court and where there was no reason for the state trial court to consider the issue because respondent failed to raise the issue at that level.

449 U.S. at 547, 101 S.Ct. at 769. The Court continued that in adding (d) to § 2254 in 1966,

> Congress ... intended not only to minimize that inevitable friction [between] state and federal courts but also to establish that the findings made by the state-court system "shall be presumed to be correct," unless one of the seven conditions specifically set forth in § 2254(d) [is] found to exist by the federal habeas court. If none of those conditions [is] found to exist, or unless the *habeas* court concludes that the relevant state-court determination is not "fairly supported by the record," "the burden shall rest upon the applicant to establish *by convincing evidence* that the factual determination by the State court was erroneous."

449 U.S. at 550, 101 S.Ct. at 770 (emphasis in original). This requirement of "convincing evidence" was intended to underscore Congress' intention that the state-court determination was not to be overturned "on the basis of the usual 'preponderance of the evidence' standard" and "[i]n order to ensure that this mandate of Congress is enforced" in that regard, the Supreme Court added that "*'we now hold that a habeas court should include in its opinion granting the writ the reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that*

*the state finding was 'not fairly supported by the record.'*" 449 U.S. at 551, 101 S.Ct. at 771 (emphasis added). The Court then found that the court of appeals had failed to observe the mandate of § 2254(d) and accordingly vacated the grant of the writ in that case.

The Supreme Court has repeatedly reaffirmed the rulings in *Sumner* in later cases. *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (*Sumner II*) (repeating its disapproval of the decision of the Court of Appeals); *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Maggio v. Fulford,* 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983); *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984); *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). *See also* 17A Wright, Miller & Cooper, *Federal Practice and Procedure Jurisdiction 2d* § 4265.1, at 403–32 (2d ed. 1988). Moreover, in *Hunt v. Woodson,* 800 F.2d 416, 418–21 (4th Cir. 1986), we reversed a grant of habeas relief in similar circumstances to those here, after reviewing *Sumner* and its line of cases. In so doing, we said:

> In a recent line of cases beginning with *Sumner v. Mata,* 449 U.S. 539 [101 S.Ct. 764, 66 L.Ed.2d 722] (1981), and continuing most recently with *Kuhlmann v. Wilson,* [477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364] (1986), the Supreme Court has clarified the meaning of § 2254(d) and in the process has reversed seven grants of the writ of habeas corpus where federal courts failed to give proper deference to state court findings of fact.

800 F.2d at 418 (citations omitted).

The case under review is singularly like *Sumner* in many important features. The state court findings and the magistrate's findings in both cases were based solely on the evidentiary record in the state court hearings. Moreover, one of the primary

facts on which the magistrate based his finding was factually in error. The magistrate excused the appellee's failure to inquire of Hunt's sister the latter's Florida address by stating that the petitioner did not know the sister. In fact, this erroneous finding was the reason the magistrate reached his contrary conclusion. However, as we have said, petitioner himself testified that he knew the sister, had talked to her before trial, and was told by her that Hunt was in Florida. This error of fact which involves significantly, if not conclusively, the question of whether the petitioner had sought with diligence to locate Hunt was so obvious and so important that the decision below could well be reversed on that ground alone. Beyond this, and even more important precedentially, the magistrate in his decision did not ever take note either of Section § 2254(d) or, for that matter, of the state court's findings. So far as his decision was concerned, that statute need never have existed, and *Sumner v. Mata* and its subsequent concurring precedents had no relevance to a case such as this, thus requiring no consideration of those decisions. The magistrate chose to make his own independent findings without giving any deference to the contrary findings of the state court. He identified no one of the eight conditions set forth in Section 2254(d) which, "satisfactorily supported by the record," would support his disregard of the state court findings or "establish by *convincing evidence* that the actual determination by the State was erroneous," except the incorrect statement that the petitioner did not know Hunt's sister. It follows that, in this case, where the recommendations of the magistrate, adopted by the district court, took no note of and made no attempt to comply with Section 2254(d) or of *Sumner v. Mata*, gave no deference whatsoever to the findings of fact by the state court, and reliance on an incorrect statement of fact, the grant of the writ by the district court was clear error and I submit it cannot stand.

The majority opinion herein, however, would avoid discussing *Sumner v. Mata* or its principle by declaring that the state had in the hearing before it made "both [an]

affirmative and tacit concession" that the petitioner had met the standard of having made a reasonably diligent effort to locate Hunt, the missing witness. It arrived at its assumption that the state had abandoned a defense of actual prejudice on a review of the tape of the oral argument and "colloquies" between the court and state's counsel at oral argument. It extracts from neither of these sources, so far as I can see, an "affirmative" concession of actual prejudice. To have done so would be to repudiate the basis on which the state courts had dismissed the petitioner's claim. Had the state intended to concede actual prejudice, it would have made unnecessary and inappropriate for it to have included the findings of the state court on this issue in its brief. Certainly, neither the federal magistrate nor the district court which adopted the magistrate's opinion (except for the retrial issue) would have had to address the issue of actual prejudice. The majority, however, would premise that the state had indicated in its brief and oral argument an abandonment of the prejudice issue and had consciously chosen to limit its argument to the contention that under *United States v. Gouveia*, 467 U.S. 180, 192, 104 S.Ct. 2292, 2299, 81 L.Ed.2d 146 (1984), delay in prosecution is only violative if the delay was both prejudicial and intentional in order to "impair defendant's ability to defend himself or to gain a tactical advantage." We do not read into the record before this court an abandonment on the part of the state of the defense of want of actual prejudice in this type of case. Moreover, the record is before us and we should render justice on the basis of the record and not on "colloquies" between the court and counsel. The record is clear on the absence of that actual prejudice which is an essential element of the petitioner's proof here, and it is equally clear that the magistrate did not conform his findings to the standard as established by Section 2254(d) and *Sumner v. Mata*. It would be a travesty for the court to refuse to consider the issue on which the decision below was based with the phrase that "the issue of actual prejudice need not be addressed." I submit we as a court of

justice are not to blind ourselves to the clear error in the decision below, whether the parties have argued the point or not. Fortunately, the rule does not compel us to close our eyes to such error. The Supreme Court in *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941), made this clear:

> Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.

In *Washington Gas Light Co. v. Virginia Electric & Power Co.*, 438 F.2d 248, 250–51 (4th Cir.1971), it was urged in an anti-trust case that since the rule in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), had not been considered by the district court or argued in the court of appeals, the court need not address that point. Relying on *Hormel v. Helvering*, we dismissed the argument, saying

> We think the rigid application of such a rule of procedure is inappropriate where the record provides an adequate basis for consideration on the merits.

Again, in *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 256 n. 2 (4th Cir.1987), we, quoting from *Walker Mfg. Co. v. Dickerson, Inc.*, 560 F.2d 1184, 1187 n. 2 (4th Cir.1977), said:

> Although this point was not presented to the district court or raised by the parties on appeal, that does not preclude the Court from considering it *sua sponte*, in order to "reach the correct result."

This is precisely such a case as requires our consideration of a ground for reversal of the judgment below, whether that ground was argued either in the briefs filed with us or during oral argument.

I would reverse the decision below and remand the case to the district court with instructions to dismiss the petition on the ground assigned by the state court. This action would make it unnecessary to consider the other ground for reversal. I, however, agree that reversal is required on that ground, too. I state briefly my reasons for this view.

I proceed now to the state's second contention. The state contends that not only must the delay in prosecution be prejudicial, but, in addition, it must have been intentional in order "to impair defendant's ability to defend himself or to gain a tactical advantage," *United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971), or was made in "reckless disregard of circumstances ... suggesting there existed an appreciable risk that the delay would impair the ability to mount an effective defense," *United States v. Lovasco*, 431 U.S. at 795 n. 17, 97 S.Ct. at 2051 n. 17. This is the rule which was stated in *United States v. Gouveia*, 467 U.S. at 192, 104 S.Ct. at 2292, on the basis of the review of *Marion* and *Lovasco*, and is the rule on which the state also, along with the absence of actual prejudice, requires reversal in this case.[3] There is no question that this rule relied on by the

---

3. In *Gouveia*, the Supreme Court said:

> Thus, at bottom, the majority's concern is that because an inmate suspected of a crime is already in prison, the prosecution may have little incentive promptly to bring formal charges against him, and that the resulting preindictment delay may be particularly prejudicial to the inmate, given the problems inherent in investigating prison crimes, such as the transient nature of the prison population and the general reluctance of inmates to cooperate. But applicable statutes of limitations protect against the prosecution's bringing stale criminal charges against any defendant, *United States v. Lovasco, supra*, 788–89, 97 S.Ct. at 2047–48; *United States v. Marion, supra*, at 322, 92 S.Ct. at 464, and, beyond that protection, the Fifth Amendment requires the dismissal of an indictment, even if it is brought with the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense. *United States v. Lovasco, supra*, at 789–90, 97 S.Ct. at 2048; *United States v. Marion, supra*, at 324, 92 S.Ct. at 465.

467 U.S. at 192, 104 S.Ct. at 2292.

state is in line with the rule in the First Circuit, *United States v. Lebron–Gonzalez*, 816 F.2d 823, 831 (1st Cir.), *cert. denied*, 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987); in the Second Circuit, *United States v. Hoo*, 825 F.2d 667, 671 (2d Cir.1987), *cert. denied*, 484 U.S. 1035, 108 S.Ct. 742, 98 L.Ed.2d 777 (1988); in the Third Circuit, *United States v. Ismaili*, 828 F.2d 153, 166–68 (3d Cir.1987), *cert. denied*, 485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988); in the Sixth Circuit, *United States v. Atisha*, 804 F.2d 920, 928–29 (6th Cir. 1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); in the Eighth Circuit, *United States v. Bliss*, 735 F.2d 294, 300 (8th Cir.1984); in the Tenth Circuit, *United States v. Jones*, 816 F.2d 1483 n. 2 (10th Cir.1987), *Perez v. Sullivan,* 793 F.2d 249, 259 (10th Cir.), *cert. denied*, 479 U.S. 936, 107 S.Ct. 413, 93 L.Ed.2d 364 (1986), and *United States v. Jenkins*, 701 F.2d 850, 854 (10th Cir.1983), and in the Eleventh Circuit, *United States v. Benson*, 846 F.2d 1338, 1342–43 (11th Cir.1988), *United States v. Caporale*, 806 F.2d 1487, 1514 (11th Cir.1986), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 763 (1987). While there has been some waffling in the decisions of the Seventh Circuit on this issue, *see United States v. Perry*, 815 F.2d 1100, 1104 (7th Cir.1987), that circuit, in two later cases in which the court relied on *Gouveia*, has come down firmly in accord with the majority rule. *United States v. Fuesting*, 845 F.2d 664, 669 (7th Cir.1988); *United States v. Antonino*, 830 F.2d 798, 804 (7th Cir.1987). The Fifth Circuit seems to continue to be inconclusive on the issue, *Dickerson v. Louisiana*, 816 F.2d 220, 229 n. 16 (5th Cir.), *cert. denied*, 484 U.S. 956, 108 S.Ct. 352, 98 L.Ed.2d 378 (1987); *but see United States v. Carlock*, 806 F.2d 535, 549 (5th Cir.1986), *cert. denied*, 480 U.S. 949, 107 S.Ct. 1611, 94 L.Ed.2d 796 (1987). Only two circuits are said to have concluded that prosecutorial misconduct is "not the *sine qua non* for a due process violation from prosecutorial indictment delay." *See* Justice White's dissent from denial of grant of certiorari in *Hoo v. United States*, 484 U.S. 1035, 108 S.Ct. 742, 98 L.Ed.2d 777 (1988). These circuits are the Fourth and Ninth, in *United States v. Automated Medical Laboratories, Inc.*, 770 F.2d 399, 403–04 (4th Cir.1985), and *United States v. Valentine*, 783 F.2d 1413, 1416 (9th Cir. 1986). It is significant that *Automated Medical*, decided shortly after *Gouveia*, did not cite or discuss that decision, which was contrary to the ruling in *Automated Medical*. I do not think that a decision decided adversely to a Supreme Court decision should be given any weight by us. I think we should follow *Gouveia* and the majority of the cases which do follow *Gouveia*. In any event, I am of the opinion that *Gouveia* should be our guide. If it is, *Gouveia* gives a second reason for reversing the decision below.

I would reverse the decision of the magistrate, adopted by the district court, on both grounds.