56 F.3d 62
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin LYNCH, Defendant-Appellant.
 No. 94-5350.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 8, 1995
Decided: June 1, 1995
 
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Kevin Lynch appeals his convictions for conspiracy to distribute cocaine and heroin and for substantive offenses relating to the distribution of each drug. He presents a tripartite argument, claiming that the district court erred (1) in denying his motion to dismiss for preindictment delay, (2) in denying his motion to compel disclosure of the identity of a confidential informant, and (3) in admitting into evidence two driver's licenses which he had fraudulently obtained. Finding no error, we affirm.
 
 
 2
 * On December 15, 1989, a confidential informant provided information to Livia Adams Cole, an agent with the United States Drug Enforcement Administration, concerning the alleged drug trafficking activities of Paul Adgerson. On December 21, 1989, the informant introduced Cole, operating undercover, to Adgerson. After negotiations between Cole and Adgerson in which the informant operated as intermediary, Adgerson directed Cole to drive him and the informant to a grocery store parking lot in Landover, Maryland. Upon their arrival, Adgerson left the car and entered a nearby Bambino's restaurant. After returning to Cole's vehicle, Adgerson instructed Cole to drive to a different location, where, with the informant acting as lookout, he sold her approximately two ounces of crack cocaine. Later that day, in the Bambino's restaurant, another DEA agent observed Adgerson give a large sum of money to an unidentified black male, who left the restaurant in a vehicle registered to Albert George Alston, Jr. At trial, this agent identified Lynch as the man he had seen in the restaurant.
 
 
 3
 A short time later, Agent Cole instructed the informant to contact Adgerson to discuss another cocaine purchase. On January 11, 1990, the negotiations were completed, and Adgerson sold Cole three ounces of cocaine in Washington, D.C. Afterward, at Adgerson's suggestion, Cole met with a man Adgerson described as his "partner," who discussed with Cole the possibility of a future heroin transaction. The "partner" left the meeting driving the same vehicle observed leaving Bambino's after the December drug deal. At trial, Cole and Adgerson each identified Lynch as the "partner."
 
 
 4
 After further communication, Cole and Adgerson agreed upon the terms of a heroin sale. On February 7, 1990, Cole and Adgerson consummated the deal at a predetermined rendezvous point. Adgerson arrived at this meeting in a vehicle driven by his still unidentified partner. Agents later discovered that this vehicle, although different than the one seen in connection with the earlier transactions, was also registered in "Alston's" name.
 
 
 5
 Because of delays by the DEA and United States Attorney's Office characterized by the district court as "extreme sloppiness," a description the government does not dispute, no indictments were brought in this case until September 24, 1992. On that date, more than two and one half years after the final drug sale, a grand jury returned an indictment against Adgerson and a codefendant identified as "Albert George Alston, Jr." Adgerson was arrested on November 18, 1992, and immediately agreed to cooperate with the government. He informed Cole that the person identified as Alston was actually named "Kevin." After further investigation, the DEA determined in February 1993 that "Kevin" was Kevin Lynch, a conclusion confirmed by Adgerson's identification of a photograph of Lynch.
 
 
 6
 On February 18, 1993, a three-count indictment was returned against Lynch, charging him with violating 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2 by distributing cocaine and heroin, respectively. The indictment also alleged that Lynch conspired with others to distribute cocaine and heroin in violation of 21 U.S.C. Sec. 846.
 
 
 7
 After a hearing, the district court denied Lynch's pre-trial motions to dismiss the indictment for preindictment delay and to compel disclosure of the identity of the informant. During his trial, Lynch unsuccessfully moved in limine to exclude from evidence two fraudulent driver's licenses bearing his photograph. After a five-day trial in which Lynch presented the defense of mistaken identity, the jury convicted him of all three counts.
 
 II
 
 8
 Lynch first contends that the government's delay in bringing the indictment compels its dismissal. Although statutes of limitations provide "the primary guarantee against bringing overly stale criminal charges," United States v. Ewell, 383 U.S. 116, 122 (1966), a lengthy preindictment delay may violate the due process clause of the Fifth Amendment. United States v. Marion, 404 U.S. 307, 324 (1971). In United States v. Lovasco, 431 U.S. 783 (1977), the Court concluded that establishing that a delay resulted in actual prejudice to the defendant is a necessary element of such a due process claim. Lovasco, 431 U.S. at 790. Interpreting the Court's Marion and Lovasco decisions, this circuit has established a two-pronged inquiry for considering contentions of due process violations by preindictment delay. United States v. Automated Medical Labs., Inc., 770 F.2d 399, 403-04 (4th Cir.1985).
 
 
 9
 First, a court must assess whether the defendant has suffered actual prejudice, and the burden of proving such prejudice is clearly on the defendant. If the threshold requirement of actual prejudice is met, the court must then consider the Government's reasons for the delay, balancing the prejudice to the defendant with the Government's justification for delay.
 
 
 10
 Id. Here, the district court held that Lynch had failed to establish the threshold prejudice requirement. As a mixed question of law and fact, the district court's finding of no prejudice will be reversed only if clearly erroneous. United States v. Beszborn, 21 F.3d 62, 66 (5th Cir.), cert. denied, 115 S.Ct. 330 (1994).
 
 
 11
 Lynch asserts three circumstances which he contends prove he was prejudiced by the preindictment delay. Initially, he asserts that a girlfriend, Michelle Cooley, kept a diary which he believes would have corroborated his story that he was in New York, not Maryland or Washington, D.C., on the dates the drug transactions occurred. According to Lynch, however, Cooley cannot now be found. He explains that she married another man in February 1992, moved from her previous address, and changed her name. Attempts to locate her, he claims, have failed.
 
 
 12
 Secondly, he claims that, if the indictment had been brought promptly, records of his former employer, Quick Trucking Company, would have proven that he was working as a truck driver in New York when the drug transactions between Cole and Adgerson took place. At the hearing before the district court, Lynch introduced evidence that Quick kept three types of documents--applications, delivery records, and weekly pay records--that he claims might have been relevant to his case. By the time of the indictment, all three types of documents from late 1989 and early 1990 had been destroyed. Quick retained the applications for a period of one year, held the delivery records only until payment was made, usually no longer than two months, and kept the pay records for three years. Although the pay records consisted only of an employee's aggregate compensation for a particular week, and did not indicate how much of that total the employee earned on a particular day, Lynch argues that a sufficiently large income for a particular week would establish that he worked five full days during that week.
 
 
 13
 Finally, Lynch maintains that the memories of his witnesses were obscured by the passage of time. He points out that several friends and family members testified that he was in New York the evening of December 21, 1989 (the date of the first cocaine transaction between Cole and Adgerson), for his grandmother's birthday party. However, their recollections conflicted with one another in various respects, including Lynch's time of arrival, his appearance, and the length of time he worked for Quick Trucking Company. None could remember any details surrounding the party or Lynch's involvement in it. Lynch claims that without the preindictment delay, his witnesses' testimonies would have produced a consistent, vivid, and believable account.
 
 
 14
 The district court dismissed as speculative Lynch's claims regarding the alleged diary, noting that Lynch never saw any of its entries.[1] With respect to the employment documents of Quick Trucking Company, the court observed that Lynch's application would not have shown whether, how long, or on what dates he worked for Quick. The court opined that the delivery records, while relevant, were typically destroyed in less than two months and could not have aided Lynch unless the indictment was brought within that period--an unrealistic expectation. The district court found that the weekly pay records were available for three years but did not show the dates and times an employee worked, and thus would not have been greatly probative. With respect to Lynch's witnesses, the court concluded that even if the indictment had been brought within one year, memories of a particular gathering were likely to have been sketchy. It ruled that the effect that an earlier trial would have had on the testimony of Lynch's witnesses was speculative.
 
 
 15
 Lynch bears the burden of showing actual prejudice resulting from preindictment delay. Automated Medical Labs., 770 F.2d at 403. We agree with the district court that he did not meet this threshold requirement. First, he has not demonstrated that he made a good faith effort to locate Cooley, his former girlfriend. See United States v. Brown, 742 F.2d 359, 362 (7th Cir.1984) (where defendant asserts prejudice from preindictment delay due to a missing witness, his claim fails where there is no evidence he "made any attempt to locate the witness [or] to secure his testimony by legal process"). For that matter, he has not made a credible claim that her diary would have exonerated him. Speculative or conclusory assertions of prejudice do not suffice. United States v. Bartlett, 794 F.2d 1285, 1289 (8th Cir.), cert. denied, 479 U.S. 934 (1986). Second, "[a]ctual prejudice cannot be proven through generalized claims of memory loss." See United States v. Scott, 795 F.2d 1245, 1249 (5th Cir.1986). Third, although a closer question, there is not a sufficient basis for disturbing the district court's finding that Quick Trucking's weekly pay records would be only marginally relevant. To show a due process violation, "the prejudice must be concrete and substantial." United States v. Canoy, 38 F.3d 893, 902 (7th Cir.1994). In sum, we, as did the district court, deplore the government's inattentiveness to this case, but agree that Lynch has failed to show that he was prejudiced by the resulting delay.
 
 III
 
 16
 Lynch next argues that the district court erred by not requiring the government to disclose the identity of the confidential informant. The general rule is that the government is under no obligation to reveal an informant's identity.[2] The general rule yields, however, if the defendant shows that disclosure "will significantly aid his defense." United States v. Smith, 780 F.2d 1102, 1108 (4th Cir.1985) (en banc).
 
 
 17
 The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
 
 
 18
 Roviaro v. United States, 353 U.S. 53, 62 (1957). The burden is on the defendant to show that this balance tilts in favor of disclosure. United States v. Blevins, 960 F.2d 1252, 1258 (4th Cir.1992). In our view, Lynch has not met that burden.
 
 
 19
 Stressing the informant's assistance in setting up the drug transactions between Cole and Adgerson and his presence at the December 21 sale, Lynch argues that the informant's testimony might have helped his case substantially. He further contends that because his defense rested in large part upon allegations that Adgerson was lying about Lynch being his source of supply, any information the infor mant could have provided about Adgerson's credibility would have been highly relevant.
 
 
 20
 In rejecting Lynch's position, the district court relied on the fact that the informant dealt only with Cole and Adgerson, not Lynch, and further relied on a redacted statement of the informant that he had never met Lynch and did not know Adgerson's source of drugs. The court was also influenced by concern for the informant's safety. It mentioned that Lynch had frequently been sighted with semiautomatic weapons. It also considered a statement of Adgerson in which he claimed that he was offered a $150,000 bribe not to testify against Lynch, was assaulted by a man he knew as a cocaine dealer whom Lynch supplied, and had his car windshield smashed just hours after receiving a "dirty look" from the man who had earlier attempted to bribe him. Applying the Roviaro balancing test, the court decided not to compel disclosure of the informant's identity. We review for abuse of discretion, United States v. D'Anjou, 16 F.3d 604, 609 (4th Cir.), cert. denied, 114 S.Ct. 2754 (1994), and approve the district court's application of the Roviaro balancing test. Cf. United States v. Brinkman, 739 F.2d 977 (4th Cir.1984) (affirming district court's refusal to compel disclosure where government's interest in ongoing investigations in which informant was involved arguably outweighed the fact that informant had participated in the offense). See also United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.1988) (noting that possibility that informant could have cast doubt on a witness's general credibility is normally insufficient to compel disclosure), cert. denied, 489 U.S. 1089 (1989) and 498 U.S. 870 (1990).
 
 IV
 
 21
 As to the two fraudulent driver's licenses, Lynch stresses that they were not issued until after the completion of the offenses with which he was charged. From this, he concludes they are irrelevant. We view this as a strained interpretation of relevancy.[3] In this case, we think the evidence of fraudulent licenses was particularly probative. Lynch claimed that he was not Albert George Alston, Jr. His ability to procure government identification under false names shows that he could successfully adopt an alias for himself, tending to bolster the government's claim that he was Alston. Even without this consideration, possession of a false driver's license is relevant, as it supports the inference that the bearer of the license wished to conceal his true identity. See United States v. Wint, 974 F.2d 961, 967 (8th Cir.1992), cert. denied, 113 S.Ct. 1001 (1993); United States v. Kloock, 652 F.2d 492, 495 (5th Cir.1981). Lynch cites no authority, nor do we find any, for the proposition that this relevancy is somehow eliminated by the fact that the licenses were not possessed contemporaneously with the crimes alleged.
 
 
 22
 We, of course, review the district court's decision to admit evidence for abuse of discretion, United States v. Mills, 995 F.2d 480, 485 (4th Cir.), cert. denied, 114 S.Ct. 283 (1993), and there was clearly no abuse here.
 
 
 23
 The judgment of the district court is, therefore, affirmed.
 
 AFFIRMED
 
 
 [1]
 Although not relied on by the district court, the government notes that a different woman testified that she and Lynch were living together in December 1989. In addition, the government claims that Lynch did not respond to its simple questions concerning Cooley, such as her full name, date of birth, job, address, car, and telephone number when Lynch knew her
 
 
 [2]
 This rule, commonly referred to as the "informer's privilege," is premised upon the recognition that preservation of informants' anonymity encourages them to communicate their knowledge of criminal activity to law enforcement officials. Roviaro v. United States, 353 U.S. 53, 59 (1957)
 
 
 [3]
 Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401