480 S.E.2d 64

The STATE, Respondent,

v.

Ross K. BRAZELL, Appellant.

No. 24545.

Supreme Court of South Carolina.

Heard Sept. 17, 1996.
Decided Jan. 13, 1997.

Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, Columbia; and Martin Banks, St. Matthews, for appellant.

Attorney General Charles Molony Condon, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Charles F. Reid, Columbia; and Solicitor Walter M. Bailey, Jr., Summerville, for respondent.

BURNETT, Justice:

Ross Brazell appeals his conviction of armed robbery and murder. Brazell claims his due process rights and his right to a speedy trial were violated. He also asserts the trial judge erred by not directing a verdict and by admitting photographs of the crime scene into evidence. We disagree and affirm.

### *Facts*

On February 4, 1987, John Jeffers was robbed and murdered on a roadside in Calhoun County. Ross Brazell was arrested on February 23, 1987, and charged with the armed robbery and murder. While awaiting trial, Brazell was detained in jail. The indictment on these charges was *nol prossed* on January 26, 1988, with leave to refile.

In 1991, the prosecution reopened the investigation. The State served an arrest warrant on Brazell in December 1991 while he was in prison for another crime. Brazell was re-indicted by the grand jury in April 1992 only for the murder of Jeffers. Subsequent to this indictment Brazell filed motions for a speedy trial and dismissal for pre-indictment delay.

On June 22, 1994, the motions were heard. Brazell claimed that he filed several motions to dismiss beginning in January 1992. However, these motions are not included in the record on appeal. Brazell's motion to dismiss for pre-indictment delay was denied. His motion for a speedy trial was conditionally granted by scheduling an August 1994 trial date. The

prosecution was warned if it did not proceed with the trial, Brazell could renew his motion to dismiss.

On July 27, 1994, Brazell was re-indicted by the grand jury for the armed robbery of Jeffers. Brazell asserted his right to a speedy trial on this charge on August 1, 1994. The trial judge denied this motion because the length of delay had been less than one week and the delay was nonprejudicial. No motion to dismiss was filed.

Brazell was tried on August 1-4, 1994, for both armed robbery and murder. The State relied on circumstantial evidence to prove Brazell's guilt. The evidence showed Brazell was involved in a check forging scheme using Jeffers' identification and Brazell had taken out a life insurance policy on Jeffers' life shortly before the murder naming himself beneficiary.

On the day before the murder, Brazell called Jeffers' home and instructed Jeffers to be on the 1:00 p.m. bus from Columbia to Jacksonville, Florida. When Jeffers missed the bus, Brazell called and told Jeffers to catch the 8:00 p.m. bus. Jeffers' father testified that Brazell told him he was in Jacksonville; however, if Brazell had been in Jacksonville at the time of the second call, he could not have known Jeffers had missed the bus.

When Jeffers was dropped off at the Columbia bus station around 7:30 p.m., two witnesses testified they noticed an individual, who resembled appellant, standing beside a brown pickup truck across the street from the bus station talking on a pay telephone. Mr. L.C. Rish, who lives only a few minutes from the crime scene, testified that Jeffers and a companion, whom Jeffers referred to as "uncle," visited his house the evening of the murder. Brazell was Jeffers' uncle.

After 8:30 p.m. on February 4, 1987, a witness testified he saw a brown pickup truck without headlights pull to the side of the road at the murder scene and saw a white male exit the truck. Later in the evening, the witness testified that, as he passed the same area, he saw Jeffers' body. Another witness testified he saw the body on the roadside close to 9:00 p.m. that evening. The State presented evidence that it was possible for an individual to drive, within thirty-five minutes,

from the Columbia bus station to the location in Calhoun County where Jeffers' body was found.

Several witnesses for the State described jewelry and money that Jeffers had in his possession when he was dropped off at the bus station. None of these items were found at the crime scene.

Brazell chose not to testify. However, several defense witnesses testified Brazell was in Conway, South Carolina on February 4, 1987.

### Issues

I. Were Brazell's due process rights under the Fourteenth Amendment violated because of the pre-indictment delay?
II. Should the trial judge have dismissed the murder and armed robbery charges because Brazell was denied his right to a speedy trial?
III. Did the trial court err when it denied Brazell's motion for a directed verdict?
IV. Did the trial court err when it admitted into evidence photographs of the victim and crime scene?

### I.

Brazell claims he was denied his due process rights under the Fourteenth Amendment of the United States Constitution because of the pre-indictment delay. We disagree.

The Due Process Clause plays a limited role in protecting against oppressive pre-indictment delay. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The United States Supreme Court has developed a two-prong inquiry when pre-indictment delay is alleged to violate due process. First, the defendant has the burden of proving the pre-indictment delay caused substantial actual prejudice to his right to a fair trial. Second, if the defendant shows actual prejudice, the court must consider the prosecution's reasons for the delay and balance the justification for delay with any prejudice to the defendant. If the court finds the delay was an intentional device to gain a tactical advantage over the accused, the court should dismiss the indictment. *Id.; Howell v. Barker*, 904 F.2d 889 (4th

Cir.), *cert. denied*, 498 U.S. 1016, 111 S.Ct. 590, 112 L.Ed.2d 595 (1990); *United States v. Automated Medical Laboratories, Inc.*, 770 F.2d 399 (4th Cir.1985). When balancing the prejudice and the justification, "[t]he basic inquiry then becomes whether the government's action in prosecuting after substantial delay violates 'fundamental conceptions of justice' or 'the community's sense of fair play and decency.'" *Howell*, 904 F.2d at 895 (quoting *United States v. Automated Medical Laboratories, Inc.*, 770 F.2d 399, 404 (4th Cir.1985)).

Substantial prejudice requires a showing that "he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely effected [sic]." *Jones v. Angelone*, 94 F.3d 900 (4th Cir.1996). When the claimed prejudice is the unavailability of a witness, courts require that the defendant identify the witness he would have called; demonstrate, with specificity, the expected content of that witness' testimony; establish that he made serious attempts to locate the witness; and finally, show that the information the witness would have provided was not available from other sources. *Howell, supra.*

Brazell claims he was prejudiced in presenting a defense by the unavailability of his star alibi witness, Ray Williams. Brazell was unable to locate Williams before the trial. Brazell alleged Williams could have testified he was with Brazell all day in Conway, South Carolina on February 4, 1987, the day of the murder.

Brazell failed to show the evidence Williams would have provided was not available from other sources. Brazell had several other alibi witnesses testify he was in Conway during the time the murder was committed. Nothing in the record indicated Williams would have been more believable than the other defense witnesses. *See Automated Medical Laboratories, Inc., supra* (finding speculative whether missing witness' testimony would be favorable to defendant).

Further, the testimony is unclear whether Williams was actually with Brazell all day. Mildred Brazell, appellant's ex-wife, testified Brazell left their house in Conway around 7:00 p.m. to go to the Hughes' house and that she, Melissa Collins, and Williams left shortly after him. Therefore, for at least a short period of time, Williams was not with Brazell. Melissa

Collins testified she was not sure if Williams returned to the house with her after they ate at the Hughes' house or if he went with Brazell to the auto auction that evening. Her statement given in 1987 stated that Williams returned to the house with her and did not go with Brazell to the auction. Olivia Hughes testified she thought Williams was also around that night because he was usually with Brazell; however, she was not sure. Charles Hughes testified Williams probably left with Brazell because he was Brazell's friend. Because Williams' contribution to the appellant's alibi is speculative, Brazell was at most only slightly prejudiced by the unavailability of Williams.

■ Brazell also argues his defense was prejudiced because the memories of his witnesses faded due to the lapse of time between the occurrence and the trial. While it is true the defense witnesses' memories of the day of the crime had faded over time, these witnesses were able to refer to statements they made during the first investigation to refresh their memories. The 1987 statements and the testimony given by the witnesses were basically consistent. It is speculative that the jury would have found their testimony more credible if their memories of that day had not faded. Although the State during its cross-examination brought out the fact that the witnesses' memories had faded, there is no evidence that the State delayed the prosecution of Brazell until the defense witnesses could no longer remember that day. Therefore, the appellant suffered only slight, if any, actual prejudice due to the dimming of the witnesses' memories.

Because Brazell failed to carry his burden of proving actual substantial prejudice, we need not consider the State's justification for the delay. Brazell's right to due process has not been denied by the pre-indictment delay.

## II.

Next, Brazell argues his right to a speedy trial was violated for both the armed robbery and the murder charges and the charges should have been dismissed. We disagree.

■ An accused is entitled to a speedy trial under the Sixth and Fourteenth Amendments of the United States Constitution and under Article 1, Section 14, of the Constitution of South Carolina. *Klopfer v. North Carolina,* 386 U.S. 213, 87

S.Ct. 988, 18 L.Ed.2d 1 (1967); *State v. Waites*, 270 S.C. 104, 240 S.E.2d 651 (1978). "Whether or not a person accused of a crime has been denied his constitutional right to a speedy trial is a question to be answered in the light of the circumstances of each case." *State v. Dukes*, 256 S.C. 218, 222, 182 S.E.2d 286, 288 (1971) (quoting *Wheeler v. State*, 247 S.C. 393, 400 147 S.E.2d 627, 630 (1966)). In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court identified several factors to be used when resolving a speedy trial issue including: (1) the length of the delay; (2) the reason the government asserts to justify the delay; (3) when and how the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant. The South Carolina Supreme Court has recognized these factors. *See State v. Foster*, 260 S.C. 511, 197 S.E.2d 280 (1973).

## Murder Indictment

■ First, it must be determined what time periods should be considered. A person's right to a speedy trial only arises when he becomes the accused. *United States v. Mac-Donald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). The time between the dismissal of a charge and the subsequent reinstatement of the charge is not included. *See United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (finding that the time during which the indictment was dismissed and defendants were free of all restrictions should be excluded from the length of delay factor); *MacDonald, supra* (once charges are dismissed, the speedy trial guarantee is no longer applicable); *State v. Chapman*, 289 S.C. 42, 344 S.E.2d 611 (1986) (holding that the defendant's speedy trial motion only encompassed the three months between his initial arrest and the dismissal of charges and the nine months between the second arrest and the motion to quash). Therefore, the eleven months between Brazell's initial arrest and the dismissal of the charges and the two years and six months between the second arrest and the motion to dismiss should be considered when deciding Brazell's speedy trial motion.

■ The length of delay in prosecuting the murder charge is disturbing. The delay totals three years and five months. Although delay alone is not dispositive, this delay is sufficient to trigger review of the other three factors. *See Waites,*

*supra* (finding that a two year and four month delay was sufficient to trigger review).

The State offers no justification for the initial eleven months during which time the defendant was detained in jail. The State claims the delay after the re-indictment was necessary because of the complexities of the case including the location of witnesses and piecing together the circumstantial evidence. It also asserts the delay was due to upheaval in the solicitor's office. However, these reasons do not excuse the lengthy delay.

It is unclear from the record when Brazell first asserted his right to a speedy trial. Brazell claimed he first asserted his right to a speedy trial in 1992 by filing a habeas corpus petition with the federal court and by filing a motion to dismiss the indictment. Both of these motions were made *pro se*. However, the prosecution claimed no motions for a speedy trial were actually filed until April 1994 when Brazell's counsel filed a motion. Brazell's motion was heard in June 1994.

As discussed in Issue I, Brazell suffered only slight prejudice, if any at all, because of the delay.

Although the delay was lengthy and the justification was unsatisfactory, Brazell's right to a speedy trial was not denied when one balances the *Barker* factors. The long delay was negated by the lack of prejudice to the defense. There is no evidence that the delay was willful or intentional. The trial judge, by setting an August trial date (less than two months away) and warning the prosecution that any further delay would probably result in dismissal, adequately protected Brazell's right to a speedy trial under these circumstances.

### Armed Robbery Indictment

The length of delay for the armed robbery charge is at the most eleven months and one week which includes the time between the initial arrest and the dismissal and the time between the second indictment and the motion to dismiss. This delay is not so troubling.

Once Brazell was re-indicted, the prosecution immediately proceeded to trial. Because both charges arose out the same event, the defense was not prejudiced by the lack of time to prepare the defense for the armed robbery charge. Bra-

zell's defense, that he was in Conway at the time of the occurrence, was the same for both charges. The State may have been negligent in delaying the re-indictment, but Brazell was not denied his right to a speedy trial on this charge.

### III.

 Brazell contends that the trial court erred in refusing to direct a verdict in his favor because the evidence presented by the State failed to place him at the crime scene and the evidence presented by the defense established that he was in Conway on the night of the murder. We disagree.

 This case is based entirely on circumstantial evidence. "The trial court has a duty to submit the case to the jury where the evidence is circumstantial if there is any substantial evidence which reasonably tends to prove the guilt of the accused or from which his guilt may be fairly and logically deduced." *State v. Copeland*, 321 S.C. 318, 326, 468 S.E.2d 620, 625 (1996); *see also State v. Edwards*, 298 S.C. 272, 379 S.E.2d 888 (1989). "In ruling on a motion for a directed verdict, the trial court is concerned with the existence of evidence, not with its weight." *Edwards*, 298 S.C. at 275, 379 S.E.2d at 889. "When this Court reviews the denial of a motion for a directed verdict, it views the evidence in the light most favorable to the non-moving party, and if there is any direct or substantial circumstantial evidence which reasonably tends to prove the guilt of the accused, refusal by the trial judge to direct a verdict is not error." *Copeland*, 321 S.C. at 326, 468 S.E.2d at 625-26.

Brazell emphasizes the testimony of the various alibi witnesses in arguing the trial court erred in denying his motion for a directed verdict. However, Brazell fails to recognize any of the evidence presented by the State to prove his guilt.

Although the evidence is circumstantial, the State presented sufficient evidence to prove each element of both charges. Testimony of witnesses placed Brazell (or someone resembling him) in the Columbia area on February 4, 1987. Mr. Rish testified that Brazell and Jeffers were together shortly before the murder. Brazell lied about his whereabouts when he called Jeffers' house on the day of the murder. Shortly before Jeffers' death, Brazell had taken out a life insurance policy on Jeffers' life naming himself as beneficiary. Brazell forged

Jeffers' name on several documents and was involved in an elaborate check forging scheme using Jeffers' identification. The money and jewelry, which were in Jeffers' possession at the bus station, were missing when his body was discovered.

The trial judge correctly submitted this case to the jury because the State presented substantial evidence from which a jury could logically and fairly deduce the guilt of Brazell for both armed robbery and murder. Thus, the trial judge did not err in denying the appellant's motion for a directed verdict.

## IV.

Brazell argues the photographs admitted into evidence by the trial court were highly prejudicial and served no purpose other than to arouse passion and prejudice in the jury. According to Brazell, other graphic testimony of how Jeffers was killed had already been given by Dr. Sexton, a forensic pathologist, and law enforcement officers. Therefore, the pictures were unnecessary, and their prejudicial effect outweighed their probative value. We disagree.

Evidence should be excluded when its probative value is outweighed by its prejudicial effect. *State v. Kelley*, 319 S.C. 173, 460 S.E.2d 368 (1995). "A trial judge has considerable latitude in ruling on the admissibility of evidence and his rulings will not be disturbed absent a showing of probable prejudice." *Kelley*, 319 S.C. at 173, 460 S.E.2d at 370; *see also State v. Kornahrens*, 290 S.C. 281, 350 S.E.2d 180 (1986), *cert denied*, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987). The determination of relevancy and materiality of a photograph is left to the sound discretion of the trial judge. *Kelley*, 319 S.C. at 173, 460 S.E.2d at 370. Photographs calculated to arouse the sympathy or prejudice of the jury should be excluded if they are irrelevant or not necessary to substantiate material facts or conditions. *Kornahrens, supra; State v. Middleton*, 288 S.C. 21, 339 S.E.2d 692 (1986).

The photographs show the crime scene and the position of Jeffers' body. Although they are in color, the pictures are not close-ups. The judge selected three of the offered photographs because he found they were not unduly prejudicial or inflammatory and they accurately reflected the scene. The

trial judge excluded other photographs of the crime scene and autopsy because he found the probative value to be outweighed by the unfair prejudice.

The photographs supported the testimony of several witnesses and were relevant to the nature of the crime. The State used the photographs to establish that the murder was a deliberate and calculated act. These photographs corroborated the testimony of Gregory Whetstone concerning the location of the body on the side of the road and Dr. Sexton concerning the injuries sustained by Jeffers.

Even if the descriptive testimony of the prosecution's witnesses adequately conveyed the brutality and malice of the crime and these photographs were unnecessary, they were harmless surplusage. *See State v. Robinson*, 201 S.C. 230, 22 S.E.2d 587 (1942) (finding the photographs unnecessary but harmless because they were not prejudicial or inflammatory). These photographs did not inflame the jury and were not prejudicial. Therefore, we find the trial judge properly admitted the three photographs into evidence.

**AFFIRMED.**

TOAL, A.C.J., MOORE, WALLER, JJ., and Acting Associate Justice DONALD W. BEATTY, concur.