602 S.E.2d 113

**The STATE, Respondent,**

v.

**Larry LEE, Appellant.**

**No. 3860.**

Court of Appeals of South Carolina.

Heard May 12, 2004.

Decided Aug. 23, 2004.

Rehearing Denied Sept. 23, 2004.

Assistant Appellate Defender Aileen P. Clare, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General David A. Spencer, all of Columbia; and Solicitor Barbara R. Morgan, of Aiken, for Respondent.

CURETON, Acting Judge:

Larry Lee appeals his convictions for four counts of first-degree criminal sexual conduct (CSC) with a minor and one count of lewd act upon a child. Lee asserts the State violated his Fifth Amendment guarantee of due process of law through excessive pre-indictment delay.[1] For the reasons set forth below, we vacate Lee's convictions.

---

1. Pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Williams*, 305 S.C. 116, 406 S.E.2d 357 (1991), Lee's appellate counsel filed a brief along with a petition to be relieved, stating her examination of the record indicated the appeal was without merit. Lee filed a separate *pro se* response. Following our *Anders* review, this court ordered the parties to brief the following issue:

 Whether the trial judge erred in declining to dismiss Lee's indictments on the ground Lee's Fifth Amendment due process rights were violated as a result of pre-indictment delay?

 This issue is now our sole appellate consideration.

## FACTS

Diana Baldwin married Larry Lee on August 29, 1982. After they married, Diana, Lee, Diana's two daughters, who were six and seven years old, and her one-year-old son moved into a home in Aiken. In the latter part of 1988, the Department of Social Services (DSS) began an investigation when Lee's stepdaughters alleged that he had sexually abused them. The allegations of abuse first arose during a juvenile criminal investigation being conducted against the stepdaughters by law enforcement officers. As a result of the investigation, DSS removed the girls from the home on September 15, 1988, and placed them in the custody of their aunt on an emergency basis until a hearing could be held in the family court. Within two to three months, DSS returned the girls to their home. Diana and Lee ultimately divorced in September of 1992.

Though the solicitor's office represented the State during all hearings before the family court, the State took no further action on the matter for more than twelve years after the children's return home. On May 14, 2001, an Aiken County grand jury indicted Lee for four counts of first-degree CSC with a minor and one count of lewd act upon a child, all arising from the allegations involving the stepdaughters. Around this same time, Lee was indicted for additional counts of CSC with a minor for incidents that occurred with different victims, including a niece, between 1985 and 1988 and in 1999.[2]

On May 17–21, 2001, Lee was tried only on the indictments involving the stepdaughters. Based on the delay, Lee's counsel requested at the pre-trial hearing that the court dismiss these indictments. During the pre-trial hearing, Lee's counsel informed the judge the State was aware of the charges in 1988 but did not arrest Lee until March 2001 and did not indict him until May 2001. According to Lee's counsel, the DSS worker who was involved in the case wrote a letter on January 6, 1989, stating DSS believed there was criminal activity and requested law enforcement make an investigation into the criminal matter. Lee's counsel also stated she was unable to locate records to determine whether this investigation had

---

2. Although it is not entirely clear, it appears Lee's former stepdaughters again came forward with their allegations after being informed of the more recent 1999 incidents.

taken place. Because the State was aware of potential criminal charges against Lee in 1988 and did not bring them until the 1999 charges involving Lee's niece, counsel argued the charges involving the stepdaughters should be dismissed. She contended Lee suffered substantial prejudice as a result of the State's negligent delay in bringing the charges. She claimed Lee was prejudiced due to the destruction of crucial records, the absence of witnesses, and the witnesses' inability to recall the alleged incidents in detail.

Specifically, counsel pointed out that the subject matter of the original investigation against the stepdaughters could not be determined given the DSS file had been destroyed and the juvenile officer who originally reported the matter to DSS recalled no details of the investigation. In similar fashion, the stepdaughters' school records were no longer available. In addition, the attorney that originally represented Lee before the family court no longer practiced law in South Carolina and could not be located. Based on these hindrances, Lee's counsel moved for the trial judge to dismiss the indictments because the delay in indicting Lee had affected his ability to mount an adequate defense. Though the State offered no explanation for the delay of more than twelve years, it countered that Lee offered no evidence the State intentionally delayed prosecution of the charges.

At the conclusion of the hearing, the judge denied Lee's speedy trial motion, but stated there may be a 5th Amendment right for pre-indictment or pre-arrest matter, but the law seems to indicate that one, there has to be—show prejudice and two you have to show intention on the part of the government to try and ... put the individual in a worse position. The judge then denied the motion.

■ The day of the trial, Lee's counsel renewed her motion. She argued Lee's right to a fair trial had been compromised by the excessive delay on the part of the State. The judge again denied the motion, stating the 6th Amendment, the right begins at the time of arrest or indictment and if you're alleging on the 5th Amendment, then you've got to show prejudice ... and you also got to show there was some intent

on the part of the State to put you in a position, a disadvantage.[3]

The jury convicted Lee of four counts of first-degree CSC with a minor and one count of lewd act upon a child. The judge sentenced Lee to an aggregate of forty-five years imprisonment. Lee appeals his convictions and sentences.

## DISCUSSION

■ Lee argues his convictions should be vacated because of the excessive pre-indictment delay. We agree.

"The Due Process Clause plays a limited role in protecting against oppressive pre-indictment delay." *State v. Brazell,* 325 S.C. 65, 72, 480 S.E.2d 64, 68 (1997); *see United States v. Lovasco,* 431 U.S. 783, 789–90, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (analyzing Due Process Clause of the Fifth Amendment with respect to pre-indictment delay); *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (recognizing Due Process Clause of the Fifth Amendment provides basis for dismissing indictment as a result of pre-indictment delay).

In *Brazell,* our supreme court considered the issue of pre-indictment delay. In its analysis, the court relied on decisions of the Fourth Circuit Court of Appeals. The court stated:

The United States Supreme Court has developed a two-prong inquiry when pre-indictment delay is alleged to violate due process. First, the defendant has the burden of

---

3. Lee's counsel's arguments regarding Lee's right to a speedy trial were intertwined with her motion to dismiss for pre-indictment delay; thus, we briefly address this issue. Here, Lee was arrested in March of 2001 and indicted and tried in May 2001. Because there was not a significant delay between the time Lee was arrested and the time he was tried, there is no merit to his contention that he was denied his right to a speedy trial. Therefore, we concluded during our *Anders* review that the judge did not err in denying the motion to dismiss on this ground. *See State v. Brazell,* 325 S.C. 65, 74, 480 S.E.2d 64, 70 (1997) (The Sixth and Fourteenth Amendments to the United States Constitution as well as Article 1, Section 14 of the South Carolina Constitution provide that a criminal defendant is entitled to a speedy trial.); *see also United States v. Marion,* 404 U.S. 307, 313–15, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (discussing pre-indictment delay in the context of the Sixth Amendment speedy trial provision; concluding Sixth Amendment speedy trial provision does not provide defendant protection until he or she is indicted).

proving the pre-indictment delay caused substantial actual prejudice to his right to a fair trial. Second, if the defendant shows actual prejudice, the court must consider the prosecution's reasons for the delay and balance the justification for delay with any prejudice to the defendant. If the court finds the delay was an intentional device to gain a tactical advantage over the accused, the court should dismiss the indictment. *Id.; Howell v. Barker,* 904 F.2d 889 (4th Cir.), *cert. denied,* 498 U.S. 1016, 111 S.Ct. 590, 112 L.Ed.2d 595 (1990); *United States v. Automated Medical Laboratories, Inc.,* 770 F.2d 399 (4th Cir.1985). When balancing the prejudice and the justification, [t]he basic inquiry then becomes whether the government's action in prosecuting after substantial delay violates 'fundamental conceptions of justice' or 'the community's sense of fair play and decency.' *Howell,* 904 F.2d at 895 (quoting *United States v. Automated Medical Laboratories, Inc.,* 770 F.2d 399, 404 (4th Cir.1985)).

*Brazell,* 325 S.C. at 72–73, 480 S.E.2d at 68–69.

Reliance on the Fourth Circuit's interpretation of the pre-indictment delay test is significant in that it applies a less stringent standard as compared to other federal circuits. *See Jones v. Angelone,* 94 F.3d 900, 905 (4th Cir.1996) (recognizing that federal circuits, with the exception of the Fourth Circuit and the Ninth Circuit, have held that in order to establish that a lengthy pre-indictment delay rises to the level of a due process violation, a defendant must show not only actual substantial prejudice, but also that 'the government intentionally delayed the indictment to gain an unfair tactical advantage for other bad faith motives' (quoting *United States v. Crooks,* 766 F.2d 7, 11 (1st Cir.), *cert. denied,* 474 U.S. 996, 106 S.Ct. 421, 88 L.Ed.2d 362 (1985))).

Under the Fourth Circuit's standard, a defendant who meets the initial burden of proving substantial actual prejudice does not have to further prove improper prosecutorial motive as the cause for the delay. *Howell . v. Barker,* 904 F.2d 889, 894–95 (4th Cir.), *cert. denied,* 498 U.S. 1016, 111 S.Ct. 590, 112 L.Ed.2d 595 (1990). In rejecting the decisions from the majority of the federal circuits, the Fourth Circuit reasoned as follows:

Taking this position to its logical conclusion would mean that no matter how egregious the prejudice to a defendant, and no matter how long the preindictment delay, if a defendant cannot prove improper prosecutorial motive, then no due process violation has occurred. This conclusion, on its face, would violate fundamental conceptions of justice, as well as the community's sense of fair play. Moreover, this conclusion does not contemplate the difficulty defendants either have encountered or will encounter in attempting to prove improper prosecutorial motive.

*Howell,* 904 F.2d at 895.

Despite the clear reliance on Fourth Circuit precedent in *Brazell,* the State contends our supreme court did not adopt the more lenient standard for pre-indictment delay. Instead, the State submits that the burden is on the defendant to show that the delay was intentional and to gain a tactical advantage. We disagree with this contention.

 Although a trial court should dismiss an indictment if the defendant shows improper prosecutorial motive for delaying indictment, such a showing is not required for pre-indictment delay to violate due process. *Brazell,* 325 S.C. at 72, 480 S.E.2d at 69. While a finding of improper prosecutorial motive ends the inquiry, the absence of such a showing does not likewise terminate the analysis. Instead, the proper course is to proceed to the two-prong inquiry applied in the Fourth Circuit in the case of *United States v. Automated Medical Laboratories, Inc.,* 770 F.2d 399, 403–04 (4th Cir. 1985), and adopted by our supreme court in *Brazell.* Under this test, the defendant first has the burden of proving the pre-indictment delay caused substantial actual prejudice to his right to a fair trial. *Id.* Second, the court must then consider the State's reason for the delay and balance the justification for delay with any prejudice to the defendant. *Id.*

Here, the trial court erred as a matter of law in placing the burden on Lee to prove substantial actual prejudice as well as the State's improper motive for the delay. Because the court required Lee to demonstrate intentional delay by the State, the court's decision is controlled by an error of law. *United States v. Lynch,* No. 94–5350, 56 F.3d 62, 1995 WL 325670, at *2 (4th Cir. June 1, 1995) (recognizing district court's decision

regarding pre-indictment delay was a mixed question of law and fact and will only be reversed if clearly erroneous) (citing *United States v. Beszborn,* 21 F.3d 62 (5th Cir.1994), *cert. denied, Westmoreland v. United States,* 513 U.S. 934, 115 S.Ct. 330, 130 L.Ed.2d 288 (1994)). Without this additional burden, we find Lee established that the delay caused substantial actual prejudice.

▇▇▇▇ In applying the first prong, substantial prejudice requires a showing that the defendant 'was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely effected [sic].' *Brazell,* 325 S.C. at 73, 480 S.E.2d at 69 (quoting *Jones v. Angelone,* 94 F.3d 900, 907 (4th Cir. 1996)). When the claimed prejudice is the unavailability of a witness, courts require that the defendant identify the witness he would have called; demonstrate, with specificity, the expected content of that witness' testimony; establish that he made serious attempts to locate the witness; and finally, show that the information the witness would have provided was not available from other sources. *Brazell,* 325 S.C. at 73, 480 S.E.2d at 69.

We note Lee did more than merely rely on the length of the delay to establish substantial actual prejudice. As Lee's counsel pointed out, the delay of twelve years presented a significant obstacle in preparing an adequate defense and receiving a fair trial. All the records from the family court case have been destroyed. No records contemporaneous with the alleged offenses are available, particularly those explaining why the stepdaughters were placed back into Lee's home after being removed. Lee's efforts to acquire the same information from other sources were likewise unavailing. Lee's original attorney could not be located, and the DSS investigator could recall no specifics about the investigation. Without this information, Lee's counsel could not adequately cross-examine the victims and other family members regarding the alleged incidents and the juvenile investigation that prompted DSS to become involved. Moreover, Lee's counsel was also prevented from refuting the delayed disclosure evidence presented by the State through its expert witness.

Because Lee established that he was actually and substantially prejudiced, the inquiry turns to a consideration of the State's reasons for the pre-indictment delay. Under the second prong of the test, the court must balance the State's justification for the delay against the prejudice to the defendant. *Brazell,* 325 S.C. at 72, 480 S.E.2d at 68–69. In this case, the State has offered no explanation for the delay in indicting Lee. Given there is no valid justification, we find the State's prosecution of Lee violated 'fundamental conceptions of justice' and 'the community's sense of fair play and decency.' *Id.* at 73, 480 S.E.2d at 69 (quoting *Howell v. Barker,* 904 F.2d 889, 895 (4th Cir.), *cert. denied,* 498 U.S. 1016, 111 S.Ct. 590, 112 L.Ed.2d 595 (1990)); *see Howell,* 904 F.2d at 895 (affirming district court's finding of unconstitutional pre-indictment delay where actual prejudice was assumed and conceded and the State failed to offer valid justification for the pre-indictment delay that prejudiced defendant). Accordingly, Lee's convictions involving his former stepdaughters are

**VACATED.**

HEARN, C.J. and STILWELL, J., concur.