653 S.E.2d 259

**The STATE, Petitioner**

v.

**Larry LEE, Respondent.**

No. 26393.

Supreme Court of South Carolina.

Heard Sept. 20, 2007.
Decided Nov. 5, 2007.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General David A. Spencer, all of Columbia, and Barbara R. Morgan, of Aiken, for Petitioner.

Appellate Defender Robert M. Pachak, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Respondent.

Justice PLEICONES:

Respondent Larry Lee (Lee) was indicted in 2001 for first-degree criminal sexual conduct (CSC) and lewd act upon a child based upon charges that he sexually abused his two stepdaughters on separate occasions between 1982 and 1985. The jury found Lee guilty, and he received an aggregate sentence of forty-five years imprisonment. The Court of Appeals vacated Lee's convictions, finding the excessive pre-indictment delay violated the Due Process Clause of the Fifth Amendment. *State v. Lee*, 360 S.C. 530, 602 S.E.2d 113 (Ct.App.2004). We granted the State's petition for certiorari and now affirm.

## FACTS

Lee married the mother of the two alleged victims in 1982. Lee, his wife, and the two stepdaughters moved into a home together. In 1988, the Department of Social Services (DSS) investigated allegations that Lee sexually abused his stepdaughters. These allegations arose during a juvenile criminal investigation involving the stepdaughters. DSS removed the stepdaughters from the home and placed them in the custody

of their aunt, but DSS returned the stepdaughters to the home with Lee within several months.

The solicitor's office represented DSS during the family court hearings in 1988 which involved the allegations against Lee. According to the State, the procedure used at that time was for an assistant solicitor to prosecute family court cases on behalf of DSS. After the family court proceedings, the State took no further action until Lee was indicted in 2001.

## ISSUE

Did the Court of Appeals err in vacating Lee's convictions due to excessive pre-indictment delay in violation of the Due Process Clause of the Fifth Amendment?

## ANALYSIS

The State argues the Court of Appeals erred in vacating Lee's convictions based on the excessive pre-indictment delay. We disagree.

■ We have adopted a two-prong inquiry when pre-indictment delay is alleged to have violated a defendant's due process rights. *State v. Brazell*, 325 S.C. 65, 72–73, 480 S.E.2d 64, 68–69 (1997) (citing *U.S. v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)). First, the defendant must prove that the delay caused substantial actual prejudice to his right to a fair trial. *Id.* The second prong requires the court to consider the reason for the State's delay and to balance the justification for the delay against the prejudice to the defendant. *Id.* The State contends that the Court of Appeals erred by finding Lee satisfied both parts of the inquiry.

*Substantial Actual Prejudice*

The State argues the Court of Appeals erred in holding that Lee met his burden of proving substantial actual prejudice because Lee presented only non-specific, conjectural possibilities of prejudice. We disagree.

■ To prove substantial prejudice, Lee must show that he was " 'meaningfully impaired in his ability to defend against

the [S]tate's charges to such an extent that the disposition of the criminal proceeding was likely effected [sic].' " *Brazell,* 325 S.C. at 73, 480 S.E.2d at 69 (quoting *Jones v. Angelone,* 94 F.3d 900, 907 (4th Cir.1996)). Prejudice to the defense of a criminal case may result from the shortest and most necessary delay, but every delay-caused detriment to a defendant's case should not abort a criminal prosecution. *U.S. v. Marion,* 404 U.S. 307, 324–325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case. *Id.* at 325, 92 S.Ct. 455.

To meet his burden of showing substantial prejudice, the defendant must identify the evidence and expected content of the evidence with specificity, as well as show that he made serious efforts to obtain the evidence and that it was not available from other source. *Brazell, supra.* The State argues that Lee cannot prove the alleged exculpatory evidence with specificity, and it contends that the missing evidence is just as likely to be inculpatory instead of exculpatory. The State's argument is without merit.

The Court of Appeals determined:

> Lee did more than merely rely on the length of the delay to establish substantial actual prejudice. As Lee's counsel pointed out, the delay of twelve years presented a significant obstacle in preparing an adequate defense and receiving a fair trial. All the records from the family court case have been destroyed. No records contemporaneous with the alleged offenses are available, particularly those explaining why the stepdaughters were placed back into Lee's home after being removed. Lee's efforts to acquire the same information from other sources were likewise unavailing. Lee's original attorney could not be located, and the DSS investigator could recall no specifics about the investigation. Without this information, Lee's counsel could not adequately cross-examine the victims and other family members regarding the alleged incidents and the juvenile investigation that prompted DSS to become involved. Moreover, Lee's counsel was also prevented from refuting

the delayed disclosure evidence presented by the State through its expert witness.

*Lee,* 360 S.C. at 538, 602 S.E.2d at 117–118.

Ample evidence supports the Court of Appeals' conclusion that Lee suffered actual substantial prejudice from the pre-indictment delay. Lee had no record of the previous DSS investigation into the alleged abuse. He could not gain access to evidence concerning the Department of Juvenile Justice investigating officer or records from the family court proceedings. Because Lee *never* had access to these records, it was admittedly difficult for him to accurately identify specific pieces of evidence that would have exonerated him. Nonetheless, the absence of any contemporaneous evidence prejudiced Lee's ability to defend himself, as he had no ability to cross-examine the State's witnesses nor obtain items of exculpatory evidence. The missing evidence, although possibly damaging, on balance would have likely benefited Lee because it would have revealed the State's justification for placing the stepchildren back in the home with Lee and revealed why the State did not prosecute him in 1988 or 1989.

For these reasons, the Court of Appeals did not err in determining Lee proved he suffered substantial actual prejudice due to the pre-indictment delay.

*Justification for Delay*

■ The State argues that Lee cannot satisfy the second prong of the due process analysis for pre-indictment delay because there is no evidence that the State acted intentionally to gain a tactical advantage over Lee. The State also argues that the twelve year delay was justified when compared to the purported prejudice to Lee. We disagree, as the absence of any prosecutorial bad faith motive is not fatal to Lee's Fifth Amendment claim.

*Brazell* sets forth the test for excessive pre-indictment delay under the Fifth Amendment. In *Brazell,* we adopted the Fourth Circuit standard[1] for the second prong of the due

---

1. The Fourth Circuit is one of two federal circuits that does not currently require a showing that the government intentionally delayed the indictment so as to gain a tactical advantage. *See U.S. v. Automated Med. Laboratories, Inc.,* 770 F.2d 399 (4th Cir.1985); *Howell v. Barker,* 904 F.2d 889 (4th Cir.1990).

process analysis. The State argues that *Brazell* did not adopt the Fourth Circuit test because the *Brazell* court declined to consider the second part of the test after Brazell failed to establish substantial actual prejudice. We disagree. Although *Brazell* did not specifically acknowledge the adoption of the Fourth Circuit rule, the Court clearly adopted the Fourth Circuit's test for pre-indictment delay by citing *Howell* and *Automated Med. Laboratories* when it discussed the two-part inquiry.

Regardless, we find the Fourth Circuit standard to be the better rule. Requiring a higher burden of proof in proving improper motives on the part of the prosecution would put an almost impossible burden on defendants to maintain a Fifth Amendment due process claim in pre-indictment delay cases. *See Howell, supra* at 895 (holding that to require proof of prosecutorial bad faith would mean that no matter how egregious the prejudice to a defendant, and no matter how long the pre-indictment delay, if a defendant cannot prove improper prosecutorial motive, then no due process violation has occurred and that this conclusion, on its face, would violate fundamental conceptions of justice, as well as the community's sense of fair play).

■ Accordingly, the second part of the due process inquiry requires the court to consider the prosecution's reasons for the delay and balance the justification for delay with any prejudice to the defendant. *Brazell, supra.* When balancing the prejudice and the justification, the basic inquiry then becomes whether the government's action in prosecuting after substantial delay violates "fundamental conceptions of justice" or "the community's sense of fair play and decency." *Id.* (quoting *U.S. v. Automated Med. Laboratories, Inc., supra* at 404).

With the balancing test in mind, the Court of Appeals correctly held that the State offered no valid explanation for the delay in indicting Lee, and thus, in light of the prejudice to the defendant, the prosecution of Lee twelve years later violated fundamental concepts of justice and the community's sense of fair play. The only explanation ever given by the State involved its reason for indicting Lee in 2001, namely that other allegations and charges of similar conduct with other

alleged victims had surfaced. However, this rationalization does not explain the delay from 1988 to 2001, nor does it justify the substantial prejudice to Lee's ability to defend against these charges.

## CONCLUSION

For the reasons previously stated, the Court of Appeals did not err in vacating Lee's convictions due the excessive pre-indictment delay of twelve years.

**AFFIRMED.**

MOORE and WALLER, JJ., concur.

TOAL, C.J., dissenting in a separate opinion in which Acting Justice E.C. BURNETT, III, concurs.

Chief Justice TOAL dissenting:

I respectfully dissent. In accordance with the majority of the federal circuits that have addressed the issue, I would hold that pre-indictment delay does not violate the Fifth Amendment's due process clause unless a defendant can show both actual prejudice and that the State has intentionally delayed the issuance of an indictment in order to gain an unfair tactical advantage. *See Jones v. Angelone*, 94 F.3d 900, 905 (4th Cir.1996) (recognizing that this test applies in every federal circuit save the Fourth and the Ninth).

But leaving this aside, I disagree with the majority's analysis of how the facts presented here interact with the majority's interpretation of this Court's decision in *State v. Brazell*, 325 S.C. 65, 480 S.E.2d 64 (1997). In contrast to the specific showing of prejudice *Brazell* purports to require, there is no specific showing of prejudice in the instant case. *See id.* at 73, 480 S.E.2d at 69 (providing that when the claimed prejudice is caused by the unavailability of a witness, courts require that the defendant identify the witness he would have called; demonstrate, with specificity, the expected testimony; establish that the defendant made serious attempts to locate the witness; and show that the information the witness would have provided was not available from another source). Although the court below broadly asserted that "[n]o records

contemporaneous with the alleged offenses are available ...
[and Appellant's] efforts to acquire the same information from
other sources were likewise unavailing," *State v. Lee*, 360 S.C.
530, 538, 602 S.E.2d 113, 117–18 (2004), the record in this case
reveals only that Appellant's attorney tried (unsuccessfully) to
subpoena documents from the Department of Social Services,
and that the persons the attorney sought to interview did not
recall these specific incidents.   In my view, this is a showing
totally devoid of specificity.

The record does not contain any evidence of an attempt to
view the family court's file regarding the prior incidents.
Furthermore, there is no evidence demonstrating that other
purportedly sought evidence, such as the alleged victims'
school records, could not be obtained from alternate sources;
nor is there evidence that the information purportedly con-
tained in school records or in the minds of potential witnesses
could not be obtained through interviewing other family mem-
bers or acquaintances.   Finally, there is no specific assertion
as to how any of this information would be beneficial to
Appellant.   No Court may justifiably ask a litigant to prove a
negative—that is to say, no Court may ask a party to specifi-
cally establish the contents of a document that the party has
never seen or the substance of testimony a party has never
heard—but Appellant's arguments are, at bottom, utter specu-
lation regarding the possible content of documents that may
never have even existed.   In my view, *Brazell* requires sub-
stantially more in the way of specificity.

As a final aside, I would dismiss the lower court's assertion
that the State offered no substantial reason for the pre-
indictment delay as completely out of place given this case's
posture.   *Id.* at 539, 602 S.E.2d at 118.   At trial, the court
adopted the State's position that the court could not find a due
process violation absent a showing that the State intentionally
delayed the issuance of an indictment in order to gain an
unfair tactical advantage.   Thus, at trial, there was no need
for the State to offer any justification for the delay whatsoev-
er.   We ought not ask the parties to make any kind of an
evidentiary showing in this Court that they did not make
below.   If *Brazell* requires reversal of the trial court's decision

because the court applied the wrong legal standard, we ought to remand to the trial court for application of the correct one.

For the foregoing reasons, I respectfully dissent.

Acting Justice E.C. BURNETT, III, concurs.